THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES OVERTON, Defendant-Appellant.

First District (1st Division)   No. 1—94—1362

Opinion filed May 20, 1996.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Elizabeth A. Scholz, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, James Overton, was convicted of armed robbery and sentenced to 10 years' imprisonment. On appeal, defendant contends that: (1) the trial court improperly admitted evidence of alleged unrelated criminal conduct; and (2) his sentence is excessive. For the following reasons, we reverse defendant's conviction and remand this matter for a new trial.

The following facts are relevant to this appeal. Defendant was charged by information with the December 10, 1990, armed robbery of William Pennington, at the Short Stop gas station and mini-mart located at 8222 South Joliet Road, in McCook, Illinois.[1]

Prior to trial, on November 17, 1993, the trial court entertained defense counsel's motion *in limine* in response to the State's notice of its intention to present evidence of other crimes at defendant's trial. The trial court noted that it had tried two other cases regarding gas station robberies involving the same defendant and co-offenders occurring in Alsip and Countryside, and that while this robbery in McCook was chronologically the first to occur, it was the last case to be tried. The State requested that the trial court allow it to bring out evidence regarding how defendant was arrested, including: that a police officer saw a vehicle at the gas station; observed a traffic violation; engaged in a high speed pursuit; saw an object thrown from the vehicle; pulled the vehicle over; arrested the defendant; and later retrieved a gun. Defense counsel objected to the introduction of any evidence regarding the Countryside robbery. The trial court ruled

---

[1]Two co-offenders, Dennis Thrasher and Daniel Henry, a/k/a Daniel Williams, were named in the information; their cases were severed from the defendant's and both pled guilty to armed robbery.

that it would allow testimony as to the initial police chase or a "traffic altercation," as well as what happened thereafter, but would not allow evidence of the facts of the armed robbery at the Countryside gas station.

Trial commenced on March 22, 1994. Prior to opening statements, defense counsel objected to the trial court's ruling permitting the circumstances of defendant's arrest and other offenses to be argued both in opening statements and in the State's case in chief. Defense counsel argued that such evidence was highly prejudicial and that the State sought to introduce the evidence not to show the circumstances leading to defendant's arrest, but as actual evidence.

The prosecutor responded that he intended to bring out evidence only as to the circumstances of defendant's arrest as follows: that on December 26, 1990, the arresting officer witnessed a vehicle traveling at a high speed out of a Shell gas station parking lot northbound on La Grange Road in Countryside; that the officer pursued the vehicle for running a red light; that during the course of that pursuit, the officer received a radio dispatch that an armed robbery occurred at the Shell station and also saw a shiny object thrown from the vehicle; and, therefore, when he stopped the vehicle, the officer asked the three occupants to get out of the car and lie face down on the ground.

Defense counsel replied that, previously, the trial court had ruled that it would not allow testimony that the officer was in pursuit of possible armed robbery subjects. The prosecutor assured the court that testimony regarding the dispatch would explain only why the officer approached the vehicle with his gun drawn, and that there would be no statement regarding the defendant's culpability for the Countryside crime or the Alsip crime. Defense counsel requested a continuance to prepare for "new" evidence, which the trial court denied. The trial court allowed defense counsel to introduce evidence that defendant was found not guilty of the Countryside robbery.

During the State's opening statement, the prosecutor referred to the radio dispatch on December 26, 1990, regarding an armed robbery at La Grange and Joliet Roads. The trial court overruled defense counsel's objection to this statement.

At trial, Countryside police officer Michael Vesconte testified that on December 26, 1990, at approximately 5:45 p.m., he was driving his squad car northbound on La Grange Road, when he observed a white Pontiac with tinted windows drive erratically out of a Shell gas station. The car exited onto Joliet Road, went through a red light, and then turned southbound on La Grange Road. Officer Vesconte made a U turn and reported a traffic offense to the radio dispatcher, providing a location, description and license plates of the vehicle. Officer

Vesconte then chased after the Pontiac, activating his lights and siren.

Officer Vesconte had been told by the radio dispatcher to stand by. While in the chase, he received a dispatch from Investigator Swanson that the vehicle and occupants he was following were wanted for an armed robbery of the Shell gas station in Countryside. Vesconte communicated his location and advised that he was attempting to stop the vehicle. During the short pursuit, he observed a metal object fly out of the passenger side window, strike the pavement and cause a spark. Shortly afterward, the officer stopped the vehicle, drew his weapon, ordered all of the occupants out, and took them into custody. Officer Vesconte described the occupants of the vehicle as two black males and a white male. The officer identified defendant in court as the white male and the driver of the vehicle. The officer identified the two co-offenders from photographs.

Next, Countryside police investigator Tim Swanson testified that he recovered a .32-caliber handgun near the Sundown Meadows forest preserve area on the west side of La Grange Road, about a half mile north of Officer Vesconte's arrest location. Swanson noted that there was no "butt stock" on the gun and that the front muzzle was chipped.

Swanson accompanied defendant to the police station and advised him of his *Miranda* rights. Defendant signed and dated a form acknowledging his rights in Swanson's presence at 7:45 p.m.

Next, former Assistant State's Attorney (ASA) Greg Plesha testified that on December 26, 1990, he was called to review an armed robbery case in Countryside. Plesha spoke with defendant at 12:45 a.m. on December 27, 1990, while he was in custody. Plesha advised defendant of his *Miranda* rights, and defendant consented to an interview. Defendant stated that he had loaned his car to the two co-offenders so that they could commit an armed robbery in McCook on December 10, 1990, but stated that he did not accompany them. Defendant's statement was not reduced to writing.

McCook police lieutenant Frank Wolfe then testified that on December 10, 1990, he interviewed William Pennington and Randy Robbins regarding the robbery of the Short Stop gas station. Robbins came to the police station and reported that two black males exited the Short Stop building and jumped into a 1988 black Thunderbird automobile, which was being driven by a heavyset, clean-shaven white male with brown hair. Robbins followed the lieutenant back to the gas station. Once there, Lieutenant Wolfe encountered Officer Grenaberg, who was interviewing Pennington.

On December 26, 1990, Lieutenant Wolfe was contacted by the

Countryside police department in connection with the investigation of the December 10, 1990, armed robbery of the Short Stop gas station in McCook. On December 27, 1990, Lieutenant Wolfe accompanied Pennington and Robbins to view a lineup at the Countryside police department. Pennington identified Dennis Thatcher from the lineup. Pennington never viewed any lineup in which defendant participated. Robbins viewed a lineup, but was unable to make any identification. Lieutenant Wolfe stated that he was present when Plesha interviewed defendant on December 27, 1990, and that defendant stated that he loaned his vehicle to Thatcher and Williams to commit a robbery in McCook. Defendant further stated in Wolfe's presence that he gave the car to Thatcher and Williams in exchange for money he owed them for drugs.

William Pennington then testified on behalf of the State that on December 10, 1990, he was working as a counter clerk at the Short Stop mini-mart in McCook. At approximately 5:55 p.m., two black men, one heavyset and one skinny, entered the mini-mart. The heavyset man held a gun on Pennington and asked for the money. Pennington noticed that the heavyset man was holding the gun "funny," his hand covering the handle and the hammer, so that neither could be seen. Pennington gave the heavyset man the cash box, the skinny man ripped the telephone off the wall, and they both ran out the door. Pennington shut off the gas pumps and tried to call the police from a telephone in the backroom. On December 27, 1990, Pennington identified the heavyset man in a police lineup.

Randall Robbins then testified that on December 10, 1990, at approximately 5:55 p.m., he stopped at the Short Stop gas station to fuel his truck. Robbins noticed another car parked at the outside of the pumps, a 1987 or 1988 black Thunderbird. Robbins noticed a heavyset white male in the driver's seat of the Thunderbird. Robbins could not tell the color of the driver's hair because it was dark.

As Robbins pumped gas, the Thunderbird pulled up about 50 to 75 feet, and then backed up toward the door of the gas station, about four to six feet away from the doors. All of a sudden, two black males exited the gas station, got into the Thunderbird, and the car sped away. Then the gas pump went off. Robbins went to the station door, where he was met by Pennington, who stated that the station was closed and locked the door. Robbins thought that unusual because the Short Stop usually stayed open until 8 p.m. Pennington then returned to the door and tried to use the pay phone outside. The phone did not work, and Pennington told Robbins what had happened. Robbins offered to go to the police station and notify the police about the robbery. After doing so, Robbins returned to the gas

station. On December 27, 1990, Robbins viewed a lineup at the Countryside police station, but was unable to make any identification.

Defendant then called Lieutenant Wolfe to the witness stand. Wolfe admitted that while he entered a description of defendant in his police report of a white, heavyset male, clean-shaven with brown hair, he did not prepare a compusketch of defendant.

Following closing arguments, the jury returned a verdict finding defendant guilty of armed robbery. The trial court denied defendant's subsequent motions for a new trial and for judgment notwithstanding the verdict, and after hearing arguments in aggravation and mitigation, sentenced defendant to 10 years' imprisonment. Defendant's timely appeal followed.

Initially, defendant contends that he was denied a fair trial by admission of Officer Vesconte's testimony that he received a radio dispatch regarding an armed robbery occurring at the Countryside Shell gas station. This testimony was admitted at trial over defendant's objection, and the trial court ruled that the evidence regarding the dispatch was not hearsay, but relevant to prove the state of mind of the arresting officer. Defendant argues that the trial court had previously ruled that this particular testimony would not be admissible at trial, and that the trial court erred in reversing itself. Defendant argues that the testimony regarding the armed robbery occurring on December 26, 1990, was irrelevant to the offense for which he was being tried, *i.e.*, the armed robbery occurring on December 10, 1990, and was therefore prejudicial.

■ Evidence which suggests or implies that the defendant has engaged in prior criminal activity should not be admitted unless somehow relevant. *People v. Lewis*, 165 Ill. 2d 305, 345-46, 651 N.E.2d 72 (1995). Although the State argues that the radio dispatch was admissible as investigation evidence, to explain the circumstances of the events leading up to defendant's arrest, evidence of other crimes is not admissible merely to show how the investigation unfolded *unless* such evidence is also relevant to specifically connect the defendant with the crimes for which he is being tried. *Lewis*, 165 Ill. 2d at 346, citing *People v. Hayes*, 139 Ill. 2d 89, 131 (1990).

The record does not reveal any evidence specifically connecting defendant to the robbery of the McCook gas station. No eyewitness testified against defendant. Two witnesses could not identify defendant in a lineup. One witness stated that he could not be sure of the hair color of the person driving the getaway car from the gas station because it was dark. The only evidence presented, at trial against defendant was his admission to an assistant State's Attorney that he

had loaned his vehicle to two co-offenders to commit an armed robbery in McCook, but this statement was not reduced to writing. Without more, no inference can be drawn from Officer Swanson's testimony that he found a gun a half mile away from the place where Officer Vesconte stopped defendant; no testimony connected defendant to any weapon. Thus, evidence of the radio dispatch concerning the Countryside robbery was clearly prejudicial.

■ We are not persuaded by the State's further argument that the radio dispatch was admissible to show defendant's *modus operandi*. Evidence of other crimes is admissible as *modus operandi* where it has some relevant purpose. *People v. McDonald*, 62 Ill. 2d 448, 455, 343 N.E.2d 489 (1975). However, the testimony must be tailored so that the jury is apprised only of the behavior and not the commission of a crime, and a prosecutor may not indicate that such behavior constituted the commission of a crime. *People v. Butler*, 58 Ill. 2d 45, 317 N.E.2d 35 (1974); *People v. Brown*, 3 Ill. App. 3d 1022, 279 N.E.2d 765 (1972). Where evidence of another crime has been erroneously placed before the jury, the State bears the burden of affirmatively showing that the error was not prejudicial. *People v. Romero*, 66 Ill. 2d 325, 330, 362 N.E.2d 288, 290 (1977).

■ Preliminarily, we note that the State never raised *modus operandi* as a theory for admissibility of the dispatch at trial. Moreover, although the State argues that the circumstances of the Countryside armed robbery are so similar to those surrounding the McCook armed robbery as to make the evidence relevant, the record shows that defendant was, in fact, acquitted of the Countryside robbery and therefore had no prior record. The record also shows that the jury was never informed of defendant's acquittal. The State has therefore failed to show either the relevance of the radio dispatch as *modus operandi* evidence, or that the evidence was not prejudicial.

■ We further find that the radio dispatch testimony constituted inadmissible hearsay. The hearsay rule prohibits the fact finder from considering testimony in court of a statement made out of court, where such statement is offered to show the truth of the matters asserted. *People v. Wallace*, 210 Ill. App. 3d 325, 568 N.E.2d 1332 (1991). Here, the State offered evidence of the radio dispatch to prove that defendant was involved in the Countryside robbery. The trial court therefore erred in overruling defense counsel's hearsay objection.

■ It is apparent that the testimony of Officer Vesconte regarding the Countryside robbery influenced the jury's determination to convict defendant of armed robbery. Under the circumstances, we find that the radio dispatch testimony was unnecessarily prejudicial, outweighing any potential probative value. As we have recently

stated, "[a]ssuaging possible jury curiosity does not justify the risk of admitting potentially prejudicial other crimes evidence." *People v. McCray*, 273 Ill. App. 3d 396, 653 N.E.2d 25, 28 (1995), citing *People v. Spiezio*, 105 Ill. App. 3d 769, 434 N.E.2d 837 (1982).

Because we have determined that the radio dispatch testimony unfairly prejudiced defendant, we reverse his conviction, vacate his sentence, and remand this matter for a new trial.

Reversed and remanded.

BUCKLEY and WOLFSON, JJ., concur.