# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Ward*, 2011 IL 108690

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PERRY WARD, Appellant. |
| Docket No. | 108690 |
| Filed | June 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a trial for criminal sexual assault, evidence admitted under section 115.73 of the Code of Criminal Procedure that a defendant had committed a criminal sexual assault against another female at a different time is admissible, as is evidence that he was tried for that other offense and was acquitted. |
| Decision Under Review | Appeal from the Appellate Court for the First District, reported at 389 Ill. App. 3d 757; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Michael P. Toomin, Judge, presiding. |
| Judgment | Appellate court judgment reversed;<br>circuit court judgment reversed;<br>cause remanded. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Patricia Unsinn and Alan D. Goldberg, Deputy Defenders, and Jessica D. Pamon, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People

Justices

CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Burke, and Theis concurred in the judgment and opinion.

Justice Garman dissented, with opinion, joined by Justices Thomas and Karmeier.

## OPINION

¶ 1    In defendant Perry Ward's trial for the criminal sexual assault of M.M., the circuit court of Cook County admitted evidence that defendant had also been involved in the criminal sexual assault of another woman, L.S. In admitting the other-crimes evidence, the court relied on section 115–7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115–7.3 (West 2006)), permitting the evidence to be used under certain circumstances to show a defendant's propensity to commit sex crimes. When defendant sought to have evidence admitted of his acquittal in L.S.'s case, however, the trial court rejected his request.

¶ 2    Defendant was convicted of the criminal sexual assault of M.M. and sentenced to 25 years in prison. The appellate court affirmed (389 Ill. App. 3d 757), and defendant now appeals to this court, arguing that the trial court erroneously refused to admit evidence of his prior acquittal.

¶ 3    We reverse the appellate court judgment affirming the trial court's refusal to admit evidence of defendant's acquittal in L.S.'s case. We conclude that barring the acquittal evidence here was an abuse of the trial court's discretion and remand the cause for a new trial.

¶ 4                              I. BACKGROUND

¶ 5    In June 2003, L.S. reported to police that she had been sexually assaulted as she was walking home alone late at night after a party. When the police took her to the hospital emergency room for treatment, she saw defendant in the waiting room and identified him as

her attacker. Subsequent testing of DNA evidence obtained from L.S. matched defendant, and defendant was charged with criminal sexual assault. At trial, defendant presented a consent defense, claiming he had paid L.S. for sex. The jury acquitted defendant of the criminal sexual assault charge.

¶ 6        The DNA evidence recovered from L.S., however, also matched DNA obtained in an unsolved February 2002 assault on M.M., linking defendant to the earlier attack. Based on that match, he was arrested and charged in the circuit court of Cook County with the criminal sexual assault of M.M. at issue in this appeal.

¶ 7        In M.M.'s case, the State filed a pretrial motion pursuant to section 115–7.3 (725 ILCS 5/115–7.3 (West 2006)), seeking to admit evidence of defendant's alleged sexual assault of L.S. At the motion hearing, the State argued that the two crimes were close in time and factually similar and that the probative value of L.S.'s testimony outweighed the risk of undue prejudice. Defense counsel argued that the other-crimes evidence was irrelevant and that its admission would be highly prejudicial because the alleged assault on L.S. was significantly more violent than the alleged assault on M.M.

¶ 8        The trial court allowed the State to admit the other-crimes evidence after considering the three factors set out in the statute for balancing the evidence's probative value against its risk of undue prejudice: "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115–7.3(c) (West 2002). The court specifically found the 16 months between the two attacks was an acceptable time frame and observed that the victims were demographically similar, met defendant under similar circumstances, and were both taken to secluded areas, where they claimed to have been threatened and forced to perform multiple sex acts. The court also cited the presence of defendant's DNA and use of a consent defense in both cases. The trial court then permitted the State to use L.S.'s testimony to establish defendant's propensity to commit sex crimes as well as the absence of mistake and lack of consent.

¶ 9        At trial, M.M. testified that she spoke to defendant, a stranger, at a store where she had walked after midnight to get some food. As they were talking, she asked defendant for a cigarette. When she reached into a van parked around the corner to retrieve the cigarettes as defendant had directed, she was shoved inside and sexually assaulted. M.M. recalled that defendant held an unidentifiable object in his hand during the assault and that she cooperated because she was threatened. In addition, Chicago police detective Edwin Kaup testified that during his interview of M.M. at the hospital after the assault she appeared to be "very traumatized, very shocked." He described her as shaking, hyperventilating, and crying.

¶ 10        Before presenting L.S.'s testimony, the State filed a motion *in limine* asking the trial court to bar defendant from telling the jury he had already been tried and acquitted of that criminal sexual assault charge. The trial court allowed the State's motion, reasoning that the jury's findings in the earlier trial were entirely irrelevant to the conclusions M.M.'s jury might draw based on the specific evidence before it. The court explained that the jury in M.M.'s assault case should make its own assessment of L.S.'s credibility and determine for itself the weight, if any, to give to her testimony. The judge added that the acquittal in L.S.'s

case could also have been attributable to the legal ability of defense counsel in that case.

¶ 11    Both before and after L.S.'s testimony, the trial court instructed the jury that it was to consider the evidence only for defendant's propensity to commit crimes and his consent defense. The trial court further informed the jury, "[i]t is for you to determine whether the defendant was involved in that offense and if so, what weight should be given to the evidence on this issue of the defendant's propensity to commit sex crimes and lack of consent." L.S. then testified to her version of defendant's alleged attack on her in June 2003.

¶ 12    In part, L.S. testified that she saw defendant standing by some bushes near the train tracks she had started to cross when coming home alone late from a friend's party. When defendant asked her if she wanted to "kick with him," meaning to spend some time with him, she told him to get away. As she started to run, he grabbed her by the hair and held a knife to her throat. He told her to "shut up" and threatened to kill her. Defendant pulled L.S. through the bushes and knocked her to the ground, where they struggled until he slammed her head against the concrete. He sexually assaulted her before again hitting her head against the concrete when she tried to burn him with her lighter. He then sexually assaulted her a second time.

¶ 13    When defendant released L.S., she went home and told her fiancé she had been raped. After he called the police, they took her first to the scene of the alleged attack and then to the hospital. As they entered the emergency room, L.S. saw defendant sitting in the waiting area and identified him to the police. A sexual assault examination was performed, and she was observed to have two small cuts, one on her neck and one on her finger, as well as scratches on her back, that she attributed to her struggle with defendant. She had no cuts or other injuries to her head.

¶ 14    During L.S.'s direct testimony, the State did not ask her any questions about the earlier trial. A reference was made during cross-examination, however, when L.S. stated that the State did not need to prepare her to testify in this case because she had testified before. Defense counsel made another brief reference to L.S.'s prior court testimony during closing arguments, observing that she was not afraid of defense lawyers or of being in a courtroom because "[s]he knows how the drill goes" since she had "testified before." In her testimony, L.S. also admitted to using a false name during a prior arrest for retail theft. Those charges were later dismissed.

¶ 15    At the close of her testimony, the trial court repeated its admonishment that the jury must decide whether defendant had been involved in the offense L.S. described and how much weight to give that evidence when evaluating both his propensity to commit sex crimes and his consent defense. A similar instruction was given, both orally and in writing, before the jury began its deliberations.

¶ 16    Defendant testified that he was an alcoholic who frequented prostitutes. He admitted having sexual intercourse with both M.M. and L.S. but insisted that the acts were consensual and that he paid both women. He then gave his version of the alleged attack on M.M., stating that she approached him at a tavern and offered to perform sexual acts for money. He also testified about L.S.'s earlier alleged assault, indicating that she, too, had solicited him for sex.

¶ 17    The jury convicted defendant of the criminal sexual assault of M.M., and he was sentenced to 25 years in prison as a Class X offender. The appellate court affirmed and denied defendant's petition for rehearing. This court allowed his petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 18                                    II. ANALYSIS

¶ 19    Defendant raises two issues before this court, but we need address only the merits of his claim that the trial court abused its discretion by refusing to admit evidence of his acquittal in L.S.'s case. Because that issue is determinative, we need not address whether principles of statutory construction or the doctrine of collateral estoppel preclude the application of section 115–7.3 (725 ILCS 5/115–7.3 (West 2006)) to defendants previously acquitted of other offenses.

¶ 20    Although defendant couches his acquittal evidence argument in terms of fundamental fairness and due process, we conclude he is not making a formal constitutional challenge to the statute. He neither identifies the applicable constitutional standard of review nor argues that section 115–7.3 violates either the state or federal constitutions. In fact, he readily admits that the statute is constitutional.

¶ 21    Instead, defendant appears to argue that the trial court erred because its refusal to admit evidence that he had been acquitted of assaulting L.S. unfairly prejudiced his defense. We review the propriety of a ruling on the admission of other-crimes evidence for an abuse of the trial court's discretion. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003). An abuse of discretion occurs when the ruling is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the trial court's view. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 22    Here, the State defends the trial court's refusal to admit the acquittal evidence because the prior verdict had been based on different evidence and could simply be attributable to more adroit "lawyering," as the trial court noted. Accordingly, it argues no abuse of discretion occurred.

¶ 23    Defendant contends that the trial court's ruling was an abuse of discretion because the jury was entitled to hear all the evidence affecting the probative value and reliability of the other-crimes evidence necessary to weigh the evidence properly. He adds that L.S.'s testimony on cross-examination "suggest[ed] that [defendant] was involved in a prior criminal proceeding involving her," "very likely" leading the jury to conclude erroneously that he had been convicted of L.S.'s sexual assault and improperly bolstering her credibility.

¶ 24    Traditionally, evidence relating to a defendant's propensity to commit crimes has been excluded from criminal trials because it tends to be overly persuasive to a jury, who may "convict the defendant only because it feels he or she is a bad person deserving punishment." *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980). See also *People v. McKibbins*, 96 Ill. 2d 176, 182 (1983) (noting that other-crimes evidence is generally inadmissible to show the defendant's propensity to commit a crime). As the United States Supreme Court explained in *Michelson v. United States*, 335 U.S. 469, 475-76 (1948),

        "Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. *** The state may not show

defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. *The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.* The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." (Emphasis added.)

¶ 25    In Illinois, however, our legislature has chosen to provide a limited exception to this general rule of inadmissibility for other-crimes evidence intended to show the defendant's propensity to commit crimes. If a defendant is tried on one of the enumerated sex offenses, section 115–7.3(b) of the Code (725 ILCS 5/115–7.3(b) (West 2006)) allows the State to introduce evidence that the defendant also committed another of the specified sex offenses. The statute expressly permits this other-crimes evidence to be admitted for any relevant purpose. 725 ILCS 5/115–7.3(b) (West 2006). As the Supreme Court recognized in *Michelson*, propensity evidence is often highly relevant, making other-crimes evidence admissible under section 115–7.3 to show a defendant's propensity to commit sex crimes.

¶ 26    Before the other-crimes evidence may be used, however, the statute requires the court to apply a balancing test, weighing the probative value of the evidence against the undue prejudice it may produce against the defendant. 725 ILCS 5/115–7.3(c) (West 2006). This court has previously upheld the constitutionality of section 115–7.3. *People v. Donoho*, 204 Ill. 2d 159, 190 (2003).

¶ 27    Here, however, defendant argues the trial court abused its discretion by precluding the admission of his acquittal evidence because L.S.'s testimony about her alleged attack was highly prejudicial and detailed a considerably more violent attack than did M.M.'s testimony. We note that the plain statutory language permits admission of both evidence of "defendant's commission of another [enumerated] offense or offenses" *and* "evidence to rebut that proof or an inference from that proof." 725 ILCS 5/115–7.3(b) (West 2006). The acquittal evidence defendant sought to admit would have aided in rebutting the inference created by L.S.'s testimony that he had a propensity to commit sex offenses, making it admissible under section 115–7.3.

¶ 28    In support, defendant cites other state jurisdictions holding that acquittal evidence is highly relevant and that it is an abuse of discretion to withhold it from the jury. See *Kinney v. People*, 187 P.3d 548, 556 (Colo. 2008). See also *Hess v. State*, 20 P.3d 1121, 1125 (Alaska 2001); *State v. Davis*, 619 P.2d 1062 (Ariz. Ct. App. 1980); *People v. Griffin*, 426 P.2d 507 (Cal. 1967); *People v. Mullens*, 119 Cal. App. 4th 648, 666 (Cal. Ct. App. 2004); *Nolan v. State*, 131 A.2d 851, 857-58 (Md. 1957); *Walker v. State*, 921 P.2d 923 (Nev. 1996); *State v. Smith*, 532 P.2d 9, 11-12 (Or. 1975); *State v. Bernier*, 491 A.2d 1000, 1005-06 (R.I. 1985). We need not examine case law from other states, however, if Illinois law adequately addresses the issue.

¶ 29    Defendant cites two Illinois appellate court decisions stating that fairness requires a jury

be told of a defendant's prior acquittal even when the other-crimes evidence is admitted only for less inherently prejudicial nonpropensity purposes. See *People v. Bedoya*, 325 Ill. App. 3d 926, 943 (2001); *People v. Overton*, 281 Ill. App. 3d 209 (1996). In *Bedoya*, the court's discussion of the acquittal evidence was arguably *dicta* because it came after the court found that the other-crimes evidence had been improperly admitted, but it constituted an extensive and integral part of the court's decision. At a minimum, the court's determination that evidence of the defendant's acquittal had to be admitted to avoid undue prejudice to the defendant constituted judicial *dicta* carrying the force of the reviewing court's determination and warranting considerable weight. *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 100 (2004).

¶ 30    In *Bedoya*, the defendant was originally tried for both aggravated discharge of a firearm and first degree murder. He was acquitted of the firearms charge but convicted of the murder charge. The murder conviction was later overturned on appeal. During the retrial of the murder charge, the State introduced evidence related to the prior firearms charge as other-crimes evidence showing the defendant's mental state at the time of the killing. The defendant, however, was barred from introducing evidence that he was previously acquitted of the firearms charge. *Bedoya*, 325 Ill. App. 3d at 928. He was again convicted of first degree murder and appealed.

¶ 31    On appeal, the *Bedoya* court reversed the murder conviction and remanded the cause for a new trial, concluding that "[f]airness required disclosure" because the "jury could have been left with the false impression that those [previously tried] 'offenses' were alive and pending," making the "risk of misleading or overpersuading the jury *** palpable." *Bedoya*, 325 Ill. App. 3d at 943. The court also found it notable that, in upholding the constitutionality of admitting other-crimes evidence in *Dowling v. United States*, 493 U.S. 342, 346, 354 (1990), the United States Supreme Court added that the jury in that case had received instructions stating that the defendant had been acquitted of the offense implicated in the other-crimes evidence. *Bedoya*, 325 Ill. App. 3d at 942-43. In addition, the *Bedoya* court relied on its prior reversal of an armed robbery conviction based on the erroneous admission of other-crimes evidence in *Overton*. *Bedoya*, 325 Ill. App. 3d at 943.

¶ 32    In *Overton*, the court held that the admission of other-crimes evidence unfairly prejudiced the defendant, requiring reversal of his conviction and remand for a new trial. *Overton*, 281 Ill. App. 3d at 217. Because the jury was not told the defendant had been acquitted of the other charge, the court found that the State had failed to demonstrate either the relevance of the other-crimes evidence "or that the evidence was not prejudicial." *Overton*, 281 Ill. App. 3d at 216. Instead, the court found that the prejudice from admitting the other-crimes evidence, absent any evidence of the defendant's prior acquittal, "was unnecessarily prejudicial, outweighing any potential probative value." *Overton*, 281 Ill. App. 3d at 216.

¶ 33    Here, the State advocates the adoption of the principle widely applied in federal courts that acquittal evidence is generally inadmissible as either hearsay that fails to prove the defendant's actual innocence or as evidence that is unduly prejudicial and potentially confusing if used to rebut inferences based on differing evidence in the two trials. Defendant counters that these cases are contrary to Illinois law and should not be followed.

¶ 34    We conclude we need not look to federal case law because existing Illinois law supplies the necessary answers. The jury's function is "to assess the credibility of witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Moss*, 205 Ill. 2d 139, 164 (2001). To perform this function properly, the jurors logically must have access to as much relevant, admissible evidence as possible. Without that evidence, the reliability of the jury's conclusions is called into question. Our reviewing courts are commonly called upon to evaluate whether a trial court's application of an evidentiary balancing test is an abuse of discretion resulting in undue prejudice. Thus, we need not consider the law applied in other jurisdictions to decide this appeal because Illinois law provides an adequate basis for our analysis.

¶ 35    To determine whether the trial court abused its discretion in barring the evidence of defendant's acquittal in L.S.'s case, we must apply a balancing test. Under that test, the court must weigh "the probative value of the evidence against undue prejudice to the defendant." 725 ILCS 5/115–7.3(c) (West 2006). The statute lists three factors that may be considered in applying this balancing test, namely, the proximity in time between the two acts alleged, the factual similarity between the acts, or other relevant circumstances and facts. The first two factors are inapplicable in the context of the acquittal evidence at issue in this case. See 725 ILCS 5/115–7.3(c) (West 2006).

¶ 36    Here, the trial court appears to have applied a balancing test in barring defendant's acquittal evidence. The court's ruling primarily relied on its views that the jury in M.M.'s case would have "twice as much in the way of eyewitness testimony" as the L.S. jury and that "they can believe [the evidence presented] *** or not." Due to the differences in the evidence admitted in the two cases, the trial court believed the comparison was improperly one of "apples and oranges" that did not justify admission of the prior acquittal judgment. The trial court also expressed concern that "what one jury does *** could be [due to] the adroitness and the masterful trial technician, that lawyer that holds a jury to say guilty on one and not guilty of another alternative." In short, the trial court appears to have concluded that the probative value of the acquittal evidence was limited due to inherent differences in the evidence presented and unfolding of the legal proceedings in the two cases. We must determine whether this conclusion was an abuse of the trial court's discretion.

¶ 37    The State argues that barring the acquittal evidence and limiting the other-crimes evidence to a single witness was proper because it precluded an undesirable "mini-trial" that could have created juror confusion and prejudice. See *People v. Walston*, 386 Ill. App. 3d 598, 619 (2008) (noting that barring a mini-trial would avoid "unfair prejudice, jury confusion, or delay"). It also emphasizes the jury's repeated instruction on the limited use of the other-crimes evidence to show defendant's propensity to commit sex crimes and the victim's lack of consent to ensure the fairness of the trial. Finally, the State maintains that barring the acquittal evidence was fair because defendant was permitted to challenge L.S.'s credibility on cross-examination by other means as well as to testify to his version of the events.

¶ 38    We conclude that the probative value of the acquittal evidence offered by defendant is derived from the very evidentiary differences the trial court used to justify the exclusion of that evidence. Here, the trial court admitted L.S.'s testimony because of similarities in the

-8-

two cases: the similar time frame, the demographic similarities of the alleged victims, the similar circumstances surrounding the women meeting defendant for the first time, the seclusion of the areas where the assaults allegedly occurred, and the repeated claim that defendant used threats to force compliance. These similarities greatly enhanced the probative value of the other-crimes evidence. The trial court's refusal to allow defendant to tell the jury he had previously been found "not guilty" of assaulting L.S., however, severely limited the jury's ability to assess her testimony in a fully realistic context. This limitation may well have artificially enhanced L.S.'s credibility because the jury in M.M.'s case did not hear all the evidence leading to defendant's prior acquittal that could have affected their consideration of her credibility.

¶ 39    While the State correctly argues that a "mini-trial" of L.S.'s case should be avoided, the complete absence of any reference to the outcome in that case severely restricted defendant's ability to convey a complete context for L.S.'s allegations. We cannot overlook the highly inflammatory nature of those allegations against defendant and his commensurate need to counter that impact with additional evidence.

¶ 40    Here, the jury knew L.S. had testified before and could only speculate on the entirety of the other testimony presented in that proceeding. Without a fuller context, the danger of excessive juror sympathy for the alleged victim is high. Naturally, sympathy could well have influenced the jury's consideration of L.S.'s testimony, adding to defendant's need to rely on the acquittal evidence. Without the benefit of even the general knowledge that defendant was acquitted of assaulting L.S., the jury could easily have been swayed after hearing only parts of the story. Here, the probative value of the acquittal evidence is in its ability to provide the jury with a more complete context for L.S.'s testimony. While the M.M. jury still had an independent duty to determine the credibility of her testimony and evaluate its weight, the acquittal evidence would have provided another part of the picture that was otherwise sorely absent.

¶ 41    Having addressed the probative value of admitting the acquittal evidence, we must next consider the potential for unfair prejudice to defendant if the other-crimes evidence is admitted without the admission of the acquittal evidence. Prejudice means "an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror." (Internal quotation marks omitted.) *People v. Lewis*, 165 Ill. 2d 305, 329 (1995) (quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1 (4th ed. 1984)). Here, the potential for prejudice is readily apparent from L.S.'s highly detailed testimony about defendant's alleged violent attack on her, followed by her statement that she had previously testified in another case. The latter evidence was elicited during defense counsel's cross-examination of L.S. when counsel inquired about whether she had been prepared to testify in M.M.'s case. In response, L.S. offered that the State did not need to prepare her because she "already knew that." In a follow-up to that response, defense counsel asked if she had previously been prepared to testify, and L.S. stated, "I already testified before."

¶ 42    Thus, the jury knew from L.S.'s testimony that she had identified defendant to the police as her attacker in a violent sexual assault and that she had provided testimony in a prior case. Despite L.S.'s brief reference to a prior arrest for retail theft, it is unlikely the jury would

have immediately connected her prior testimonial experience with that charge because she stated that "they threw [that charge] out, it was dismissed," implying that case was never tried. Moreover, the violent and highly inflammatory nature of L.S.'s accusations against defendant far overshadowed the mere seconds spent in reference to the dismissed retail theft charge.

¶ 43 Given the graphic nature of the depiction of defendant's alleged attack on L.S., the jury naturally would have assumed the State had pressed charges against defendant, providing a more likely context for L.S.'s prior testimony. Therefore, L.S.'s testimony left the jury to speculate whether those charges against defendant were ongoing or had already been resolved. The admission of evidence that defendant had been acquitted of assaulting L.S. would have put to rest that speculation and provided a context for her statements about having "already" given testimony.

¶ 44 Under this court's definition in *Lewis*, the prejudicial impact of not informing the jury about defendant's acquittal is obvious. See *Lewis*, 165 Ill. 2d at 329 (defining "prejudice" as "an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror" (internal quotation marks omitted) (quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1 (4th ed. 1984)). A jury would have likely reacted to L.S.'s testimony describing her violent attack with sympathy for her and hatred or contempt for the alleged perpetrator, here, defendant. This reaction would have seriously prejudiced the jury against defendant.

¶ 45 Moreover, the jury was instructed that the other-crimes testimony was relevant to both defendant's propensity to commit sex crimes and the victim's lack of consent, seriously undercutting his sole defense of consent. As in *Bedoya*, the jury repeatedly received a limiting instruction stating that the other-crimes evidence showed defendant had been "involved in an *offense* other than that charged in the indictment" and that it was the jury's job to determine whether defendant was involved in that "offense" as well as the weight to be given to that testimony. (Emphasis added.) See *Bedoya*, 325 Ill. App. 3d at 943. These repeated references to defendant's prior "offense" implicitly supported a jury inference that defendant had been charged, and perhaps even convicted, on L.S.'s claims. That inference, in turn, further supported the jury's already likely conclusion that L.S. had testified in earlier proceedings involving defendant's alleged attack on her, adding to the jury's potential speculation about the outcome of that case and the prejudice against defendant.

¶ 46 The other-crimes evidence was admitted under section 115–7.3 to prove defendant's propensity to commit sex crimes. Due to the inherently high, and often overly persuasive, probative value of such propensity evidence, the need to avoid unfair prejudice by providing a full context for the other-crimes testimony is readily apparent. Given the real possibility the jury would convict defendant based on his alleged prior bad acts alone, barring the acquittal evidence further enhanced the already high danger of undue prejudice against him. See 725 ILCS 5/115–7.3(c) (West 2006) (stating the proper balancing test for the admission of other-crimes evidence as "weighing the probative value of the evidence against undue prejudice to the defendant").

¶ 47 Although the trial court expressed concern that differing evidence in the two cases

required the jury to compare "apples and oranges," any potential jury confusion could easily have been remedied. For example, if the acquittal evidence had been admitted, the jury could have been informed that a verdict of "not guilty" may have been attributed to a number of factors and does not conclusively establish defendant's actual "innocence." As our courts have long recognized, jurors tend to find propensity evidence overly persuasive and to give it too much weight, prompting them to prejudge defendants based on their generally bad records. *Michelson*, 335 U.S. at 476; *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980). As the *Michelson* Court explained, in "practical experience *** disallowance [of propensity evidence] tends to *prevent* confusion of issues, unfair surprise and undue prejudice." (Emphasis added.) Here, juror confusion would be similarly minimized by providing the jury will a more complete context for their consideration of L.S.'s testimony.

¶ 48    Because the proper application of the balancing test firmly establishes the serious risk of undue prejudice to defendant created by the admission of the other-crimes evidence in the absence of any acquittal evidence, "[t]he risk of misleading or overpersuading the jury is palpable." "Fairness requires disclosure." *Bedoya*, 325 Ill. App. 3d at 943. We hold that barring the admission of the acquittal evidence was an abuse of the trial court's discretion. The ruling was unreasonable under the facts and circumstances of this case. See *People v. Harvey*, 211 Ill. 2d 368, 392 (2004).

¶ 49    We find unpersuasive the State's final argument that any error in barring the acquittal evidence was harmless. The only issue in dispute at trial was defendant's consent defense. Repeating a jury instruction limiting the use of the other-crimes evidence to show defendant's propensity to commit sex crimes and a lack of consent could not cure the underlying error. Indeed, the language of that instruction likely led the jury to speculate about the outcome of the proceedings on defendant's prior "offense." Without knowledge of defendant's acquittal, the jury was not able to evaluate the other-crimes evidence fully, unduly limiting defendant's ability to present L.S.'s testimony in the proper context. Given the recognized tendency for juries to be overly persuaded by propensity evidence (*Michelson*, 335 U.S. at 476; *Lindgren*, 79 Ill. 2d at 137), we cannot say the trial court's error in barring defendant's acquittal evidence was harmless. Based on that error, we reverse defendant's conviction for the criminal sexual assault of M.M. and remand for a new trial where evidence of defendant's acquittal in L.S.'s case will be admitted if she again provides other-crimes evidence.

¶ 50    Because we are remanding this cause for a new trial, we must consider whether another trial would violate the double jeopardy clause. If the totality of the evidence presented at defendant's first trial was sufficient for a rational trier of fact to find that the essential elements of the crime had been proven beyond a reasonable doubt, no double jeopardy violation is created on retrial. *People v. McKown*, 236 Ill. 2d 278, 312 (2010). Here, the jury was obliged to determine the critical issue of consent, and the State's evidence, if believed, was sufficient to establish defendant's guilt beyond a reasonable doubt. No double jeopardy impediment to retrial is presented here.

¶ 51                                    III. CONCLUSION

¶ 52    For the reasons stated, we conclude that the trial court's bar on the admission of defendant's acquittal evidence must be reversed as an abuse of its discretion. Accordingly, we reverse the appellate court's judgment and defendant's conviction and remand the cause to the circuit court for a new trial.

¶ 53    Appellate court judgment reversed;

¶ 54    circuit court judgment reversed;

¶ 55    cause remanded.

¶ 56    JUSTICE GARMAN, dissenting:

¶ 57    The majority concludes that defendant is entitled to a new trial on the basis that it was reversible error for the trial court to deny admission of evidence of his previous acquittal of the attack on L.S. Because I believe that the trial court's ruling on the admissibility of this evidence was neither arbitrary, fanciful, or unreasonable, nor a view that no reasonable person would adopt (see *People v. Donoho*, 204 Ill. 2d 159, 182 (2003)), I respectfully dissent. In my opinion, the majority does not give sufficient deference to the trial court, thereby undermining the abuse of discretion standard, and reaches a result that may lead to unintended consequences.

¶ 58    Threshold Issue

¶ 59    As a threshold matter, defendant argues to this court on two separate grounds that evidence regarding the attack on L.S. should not have been admitted pursuant to section 115–7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115–7.3 (West 2006)). He argues that as a matter of statutory interpretation, section 115–7.3 of the Code does not permit admission of other-crimes evidence when the defendant has previously been acquitted of the other crime. He also argues that admission of this evidence is barred by the doctrine of collateral estoppel.

¶ 60    The State responds that defendant has forfeited the statutory interpretation issue for failure to raise it as a one of the "points relied upon" in his petition for leave to appeal as required by Supreme Court Rule 315(c)(3) (Ill. S. Ct. R. 315(c)(3) (eff. Oct. 15, 2007)). The State also argues that he has forfeited the collateral estoppel issue by failing to raise it at trial and in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Finally, the State argues that defendant has not demonstrated that either of these claimed errors constitutes plain error under Supreme Court Rule 615(a) (Ill. S. Ct. R. 615(a)).

¶ 61    The majority, however, does not discuss these issues (see *supra* ¶ 19), which will most certainly be raised again in a new trial. Further, if defendant is correct that the other-crimes evidence should not have been admitted in the first place, the issue that the majority does address is moot. Therefore, this court should either address these issues or explain why it is not doing so.

¶ 62    Presentation of Facts

-12-

¶ 63    The majority devotes a single paragraph to summarizing the prosecution's evidence in this case. *Supra* ¶ 8. This is a significant omission, given the majority's characterization of the attack on L.S. as "considerably more violent" than the attack on M.M. (*supra* ¶ 28) and its ultimate conclusion that the error it finds is not harmless (*supra* ¶ 49).

¶ 64    At trial, M.M. testified that after midnight on February 23, 2002, she left her sleeping husband in their southside Chicago home and walked to a nearby restaurant and liquor store to get something to eat and to buy beer and cigarettes. She was 49 years old at the time and weighed 105 pounds. After she arrived at the store, she spoke to several people there, including defendant. While she was waiting for her food, she stepped outside. Defendant was smoking and she asked him for a cigarette. He told her that his cigarettes were in his van, which was parked at the side of the restaurant. She walked with him around the corner to the van. At the van, he opened the door and told her the cigarettes were inside on the seat. When she reached inside, he pushed her into the back of the van, which had no passenger seat, and followed her inside.

¶ 65    She further testified that he threatened to kill her if she "hollered" and forced her to remove her clothing. He had some sort of object in his hand, which she could not identify. Defendant forced her to touch him and to perform oral sex on him. She prayed and begged him not to hurt her. He attempted to penetrate her anally, but she fought him. Eventually, he penetrated her vaginally and thereafter had vaginal intercourse with her "several" times. Over the course of the four or five hours he kept her in the van, he repeatedly threatened to kill her if she told anyone about the incident.

¶ 66    Defendant eventually released M.M. after again threatening to kill her if she told anyone what had happened. She ran home and told her husband, who called the police. The police took her to the hospital for a sexual assault examination.

¶ 67    Other witnesses testified to the chain of custody of the evidence gathered in the course of her examination at the hospital. The parties stipulated that if called to testify, Illinois State Police forensic scientist Marla Fiorelli would testify that the vaginal swabs taken from M.M. revealed the presence of semen. Fiorelli also preserved and prepared the samples taken during the sexual assault examination and sent them to a commercial laboratory for DNA testing. The parties also stipulated that forensic scientist Brian Schoon, if called to testify, would testify that the DNA profile from the vaginal swabs collected from M.M. matched the DNA profile obtained from a buccal swab collected from defendant.

¶ 68    Chicago police detective Edwin Kaup testified that he interviewed M.M. at the hospital and found her to be "very traumatized, very shocked." He described her as shaking, hyperventilating, and crying. From her description, he located the van near the restaurant and had it processed for evidence. He identified the owner of the van from its license plates. The owner informed him that the van was inoperative and that it had been parked in the alley for several weeks. He knew that people "squatted" in the van.

¶ 69    Later that evening, M.M. went to the police station to view a line-up. The owner of the van agreed to appear in the line-up; defendant was not present. M.M. did not identify anyone in the line-up as her attacker.

¶ 70    Chicago police detective Robert Distasio testified that in March 2005, he contacted M.M.

in Decatur, Georgia, where she was living with her grandchildren after the death of her husband. At his request, she returned to Chicago to view a line-up. This time defendant was a member of the line-up and she identified him as the man who attacked her in 2002.

¶ 71                              Application of Abuse of Discretion Standard

¶ 72      The question for this court is whether the trial court's exclusion of evidence of the acquittal was an abuse of discretion. The majority does not directly address the State's arguments, including the assertion that evidence of an acquittal is inadmissible hearsay. In addition, the majority applies an incorrect evidentiary rule to reach its conclusion and fails to clearly establish that the acquittal evidence is relevant to a material fact.

¶ 73                                   *Arguments Not Addressed*

¶ 74      The State's argument is mischaracterized by the majority. The State does not defend the trial court's ruling on the basis that "the prior verdict had been based on different evidence and could simply be attributable to more adroit 'lawyering.' " *Supra* ¶ 22. Although the State may very well agree with this statement, this is not the gravamen of the State's argument. The State notes that the jury in the earlier trial did not make a special finding as to the credibility of L.S. and that its general verdict of not guilty "may have resulted from lenity, failure to follow the law, or a failure to prove an element of the offense." Because the evidence in that case was essentially a swearing contest between the alleged victim and the defendant, a not-guilty verdict could have resulted from proper application of the beyond-a-reasonable-doubt standard, even if the jury found L.S. and defendant to be equally credible. Thus, the State argues, permitting the defendant "to attack the credibility of [L.S.] with an acquittal based on a prior jury's opinion about the weight of evidence not before the jury is both misleading and confusing, and imbues the acquittal with a power it does not possess–to brandish L.K. as incredible." Therefore, the State asserts, the trial court did not abuse its discretion by excluding evidence of the acquittal. In addition, the State also argues that while evidence of a conviction is an exception to the hearsay rule, evidence of an acquittal is not. The majority does not directly engage any of the State's arguments.

¶ 75                                  *Applicable Rules of Evidence*

¶ 76      When a defendant is accused of certain crimes, section 115–7.3(b) permits the admission of "evidence of the defendant's commission of another offense or offenses" of a similar nature "for its bearing on any matter to which it is relevant," including the propensity of the defendant to commit the crime of which he is accused. 725 ILCS 5/115–7.3(b) (West 2006). Such evidence must be "otherwise admissible under the rules of evidence." *Id.*

¶ 77      Under the generally applicable rules of evidence, evidence may not be admitted unless it is relevant. Ill. R. Evid. 402 (eff. Jan. 1, 2011) (codifying common law rule). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011) (codifying common law rule). The evidence,

even if relevant, will be excluded if its admission would violate another rule of evidence, such as the hearsay rule (see Ill. R. Evid. 802 (eff. Jan. 1, 2011) (codifying common law rule)). If relevant and otherwise admissible, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011) (codifying common law rule).

¶ 78    In addition, when the State seeks to admit other-crimes evidence pursuant to section 115–7.3, section 115–7.3(c) guides the trial court's "weighing the probative value of the evidence against undue prejudice to the defendant," by directing the court to consider three factors in addition to the factors listed in Rule 403. The court "may consider: (1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115–7.3(c) (West 2006).

¶ 79    The first two factors relate to the other crime's probative value as evidence of the defendant's propensity to commit the crime charged. The more similar the two crimes and the closer in time they occurred, the more probative the other-crimes evidence would be. The third factor, "other relevant facts and circumstances," would include, among other things, the fact that the defendant has previously been tried for the other offense, the outcome of that trial, and whether the complaining witness in that case is available to testify in person in the present case. For example, if a defendant were acquitted in the first trial based on his denial of the assault and the testimony of an alibi witness, a court might exclude the other-crimes evidence in a second trial in which his defense is consent, no matter how factually similar the two offenses or how close their proximity in time.

¶ 80    If, after considering the Rule 403 factors and the section 115–7.3(c) factors, the court allows the State to admit the other-crimes evidence, the defendant may admit "evidence to rebut that proof or an inference from that proof." 725 ILCS 5/115–7.3(b) (West 2006).

¶ 81    The majority states that the court must again apply section 115–7.3(c) and "weigh the probative value of the evidence against undue prejudice to the defendant" when deciding on the admissibility of such rebuttal evidence. (Internal quotation marks omitted.) *Supra* ¶ 35; see also *supra* ¶ 46. This is not the correct formulation of the balancing test that should be applied to rebuttal evidence. Instead, the rebuttal evidence should be evaluated under the generally applicable rules of evidence.

¶ 82    Section 115–7.3(c) specifically focuses on "undue prejudice to the defendant." 725 ILCS 5/115–7.3(c) (West 2006). The defendant's own rebuttal evidence cannot, by definition, cause him "undue prejudice." Thus, by its own terms, section 115–7.3(c) applies to only evidence that the State seeks to admit *against the defendant*, not to rebuttal evidence proffered by the defendant.

¶ 83    Even if the members of this court are to disagree as to the merits of this particular case, we should agree that based on the plain language of section 115–7.3(c), evidence offered to rebut other-crimes evidence admitted pursuant to section 115–7.3(b) should be evaluated under the generally applicable rules of evidence.

¶ 84    Under these general rules, when a defendant offers evidence to rebut other-crimes evidence admitted pursuant to section 115–7.3, the court should first consider whether the proffered evidence tends to rebut the evidence that he committed the other crime–that is, is it relevant? Second, is the rebuttal evidence otherwise admissible under the rules of evidence? Third, if so, is its probative value substantially outweighed by any of the Rule 403 concerns?

¶ 85    This is the analysis followed by the trial court in the present case. The trial court allowed the State's motion *in limine*, reasoning that what one jury made of the evidence in the earlier trial was "entirely irrelevant" to what the jury in this case might conclude from the different evidence before it. The court explained that this jury should make its own assessment of the credibility of L.S. and its own determination of the weight, if any, to give to her testimony. After concluding that the evidence of defendant's acquittal was not relevant to any material fact at issue in the present case, the trial court stated that even if the evidence were relevant, it would balance the factors in favor of excluding the evidence.

¶ 86                                            *Relevance*

¶ 87    The majority addresses the question of relevance by discussing the "probative value of the acquittal evidence." *Supra* ¶ 40. Probative value is but one aspect of relevance. To be relevant, evidence must be both material and probative. That is, it must relate to a fact of consequence and it must tend to make that fact more or less probable. See Ill. R. Evid. 401 (eff. Jan. 1, 2011); see also Black's Law Dictionary 1066 (9th ed. 2009) (defining "material" as "[h]aving some logical connection with the consequential facts"); *id.* at 1323 (defining "probative" as "[t]ending to prove or disprove").

¶ 88    The fact of consequence to which the proffered evidence is said to relate is L.S.'s credibility. *Supra* ¶ 37. Yet, as the trial court noted, the jury heard her testimony and was perfectly capable of assessing her credibility. Indeed, assessing the credibility of all witnesses is the obligation of the jury in every case.

¶ 89    The majority says that hearing her testimony and defendant's conflicting version of the events "may well have artificially enhanced" her credibility. I am at a loss to understand how her sworn testimony, subject to cross-examination, and rebutted by the defendant's own testimony, was "artificially" bolstered in any way.

¶ 90    The majority is also concerned about the jury's "ability to assess her testimony in a fully realistic context," and that the defendant was unable "to convey a complete context for L.S.'s allegations." *Supra* ¶¶ 38, 39. The jury needed "a fuller context," to balance sympathy for the alleged victim (*supra* ¶ 40), and the "probative value of the acquittal evidence is in its ability to provide the jury with a more complete context for L.S.'s testimony" (*supra* ¶ at 12). "Context" is not a term of art and the majority does not explain what it means by its repeated use of this term.

¶ 91    "Context," according to the dictionary, means "the circumstances in which a particular event occurs." Webster's II New College Dictionary 243 (1999). The context of the assault was described by L.S. in her testimony. She stated under oath that the defendant sexually assaulted her after chasing her, grabbing her hair, putting a knife to her throat, and dragging

her through some bushes. The context of the testimony itself was L.S.'s sworn testimony in this trial. The earlier acquittal is not the context of either event. It is information regarding a past event in the defendant's life, but it is neither relevant to nor probative of L.S.'s credibility.

¶ 92    A guilty verdict in a prior prosecution shows that every one of the 12 jurors in that case concluded that the State had proven each element of the charged offense beyond a reasonable doubt. A not-guilty verdict, on the other hand, is less telling. All it reveals is that the jurors concluded that the State did not meet its burden of proof. One or more of the jurors in the earlier trial may not have found the State's witness credible. Others may have found the State's witness and the defendant equally credible and, following their instructions regarding the State's burden of proof, voted to acquit. One or more may simply not be inclined to believe that a rape occurred absent severe physical injury to the victim. Others may hold a "blame the victim" mindset, feeling that a victim of sexual assault may have invited trouble by her dress or her conduct. And, as the trial court noted, good lawyering, such as masterful cross-examination of the State's witnesses by defense counsel and strongly persuasive closing argument, may play a role in an acquittal.

¶ 93    I do not attempt to read the minds of the jurors in defendant's first trial or speculate as to the bases for their votes to acquit. I merely point out several possible bases to illustrate that while the verdict of not guilty may have been unanimous, it does not necessarily express the jury's unanimous assessment of the credibility of either L.S. or the defendant. Thus, it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Ill. R. Evid. 401 (eff. Jan. 1, 2011).

¶ 94    The majority is also persuaded by defendant's argument that L.S.'s testimony on cross-examination suggested to the jury that he was involved in a prior criminal proceeding involving her, "very likely" leading the jury to conclude that he had been convicted in that trial. This, he suggests, makes his acquittal relevant rebuttal evidence.

¶ 95    In describing the testimony of L.S., the majority notes that a "reference was made" to the earlier trial when "L.S. stated that the State did not need to prepare her to testify in this case because she had testified before." *Supra* ¶ 14.

¶ 96    In fact, L.S. did not make these comments spontaneously. Rather, defense counsel asked her on cross-examination about her prior experience as a witness, despite the trial court's having already allowed the State's motion *in limine*. Defense counsel was well aware that he was barred from informing the jury that defendant had been tried and acquitted of assaulting L.S. Thus, to the extent that the jury gave any thought to the possibility that defendant had previously been tried for the assault on L.S., such speculation was not only invited, but encouraged, by defense counsel in defiance of the trial court's ruling. This speculation was further encouraged by defense counsel's remarks during closing argument.

¶ 97    Based on an abbreviated presentation of the L.S.'s testimony and the conduct of defense counsel, the majority concludes that the jury "naturally would have assumed the State had pressed charges against defendant." *Supra* ¶ 43. Yet the attack on L.S. occurred in June 2003 and the attack on M.M. occurred in February 2002. It is just as likely that the jury would have

-17-

concluded that the earlier crime was being prosecuted first and that the later crime would be prosecuted later.

¶ 98　Of course, we have no way of knowing what thought the jury gave to this question, if any. It is sheer speculation for this court to attempt to read the minds of jurors when the testimony they heard, in light of the instructions they were given, could reasonably have led to either conclusion. In addition, to the extent that the jury might have inferred that the defendant had already been convicted of sexual assault, that inference was planted in their minds by defense counsel.

¶ 99　I would, therefore, give little weight to defendant's argument regarding what the jury might have concluded regarding the possibility of a prior prosecution.

¶ 100　In my opinion, the trial court's conclusions that the acquittal evidence was irrelevant to any fact of consequence in the present case and that the jury was fully capable of making its own assessment of the credibility of both L.S. and defendant were not arbitrary, fanciful, or unreasonable, or views that no reasonable person would adopt. See *Donoho*, 204 Ill. 2d at 182. Therefore, exclusion of the acquittal evidence was not an abuse of discretion.

¶ 101　　　　　　　　　　　　*Otherwise Admissible*

¶ 102　Even if proffered evidence is relevant to a fact of consequence in the case, it must be admissible under the generally applicable rules of evidence before it may be admitted pursuant to section 115–7.3 (725 ILCS 5/115–7.3(b) (West 2006)).

¶ 103　The State argues that evidence of acquittal is hearsay and cites several cases from the federal courts of appeals for this proposition.

¶ 104　The majority does not address this argument, which must be resolved before acquittal evidence may be admitted as rebuttal of other crimes-evidence pursuant to section 115–7.3. As this question is certain to arise on remand and because it has been fully briefed and argued by the parties, this court should address it.

¶ 105　　　　　　　　*Balancing of Probative Value and Prejudice*

¶ 106　Because the majority misstates the balancing test, it considers "the potential for unfair prejudice to defendant if the other-crimes evidence is admitted without the admission of the acquittal evidence." *Supra* ¶ 41. This conflates two separate evidentiary issues–the admission of other-crimes evidence pursuant to section 115–7.3 for the purpose of showing propensity and the admission of rebuttal evidence proffered by the defendant.

¶ 107　First, the trial court decides whether the other-crimes evidence is admissible under section 115–7.3. At this stage, the court considers the potential for unfair prejudice *to the defendant* if the other-crimes evidence is admitted. 725 ILCS 5/115–7.3(c) (West 2006). The fact that the defendant has been tried and acquitted of the other crime, the defense he raised in that case, and his ability to rebut the other-crimes evidence are facts and circumstances that affect this analysis.

¶ 108　In the present case, the trial court found the earlier offense sufficiently similar to the charged offense and that the two offenses were close enough in time to make the other-

crimes evidence relevant to defendant's propensity. The trial court was aware that defendant had been acquitted in an earlier trial in which he raised a consent defense and that the alleged victim in that case was going to testify for the State and be subject to cross-examination by the defense. On this basis, the trial court allowed the State to admit the other-crimes evidence.

¶ 109    Second, once other-crimes evidence has been allowed, the defendant's proffered rebuttal evidence is subject to the generally applicable rules of evidence. Under the generally applicable balancing test, proffered evidence, if relevant and otherwise admissible, is to be admitted unless its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011). Under this rule, the party urging admission of the evidence does not argue prejudice if it is *not* admitted–he argues that the evidence is highly probative in his favor. The party opposing admission of the evidence argues unfair prejudice to his case, confusion of the issues, or other Rule 403 considerations.

¶ 110    "Undue prejudice," in this rule, does not refer to "hatred, contempt, or horror" as the majority suggests. *Supra* ¶ 41. Rather, it refers to the "harm resulting from a fact-trier's being exposed to evidence that is persuasive but inadmissible *** or that so arouses the emotions that calm and logical reasoning is abandoned." Black's Law Dictionary 1299 (9th ed. 2009). Prejudice, in this sense, is equated with confusion of the issues, such as might occur if a jury improperly equates a verdict of acquittal with a finding of actual innocence. Indeed, each party seeks to present evidence that will undermine, *i.e.*, prejudice, the opposing party's case. This is the nature of the adversarial system. The test is whether that prejudice is "undue." See *id.* at 1666 (defining "undue" as "[e]xcessive or unwarranted").

¶ 111    In the present case, the evidence proffered by defendant–the fact of his prior acquittal–has little probative value because it does not establish his innocence of that offense and because the jury in the present case was able to make its own assessment of L.S.'s credibility based on its direct observation of her during direct and cross-examination. The State's case would be unduly prejudiced by this piece of evidence because the other-crimes evidence was properly admitted for a proper purpose and the evidence of acquittal had the very real potential of misleading or confusing the jury.

¶ 112    In my opinion, the trial court did not abuse its discretion by excluding the acquittal evidence because, even if it had some minimal probative value, that value was more than outweighed by the potential for undue prejudice to the State's ability to present its case in full compliance with the Rules of Evidence and the intent of the legislature in enacting section 115–7.3 of the Code.

¶ 113                              Treatment of Case Law

¶ 114    Defendant cites two cases from the appellate court to argue that it is "settled law" in Illinois that when other-crimes evidence is admitted, and the defendant has been acquitted of the other crimes, he should be allowed to offer evidence of his acquittal. He argues that in these two cases, other-crimes evidence was admitted for nonpropensity purposes and

asserts that when, as in the present case, such evidence is allowed to show propensity, it is even more "risky" to exclude evidence of acquittal.

¶ 115 The majority states that in *People v. Bedoya*, 325 Ill. App. 3d 926 (2001), the appellate court reversed the murder conviction and remanded the case for a new trial because the jury was not told that defendant, whose previous murder conviction had been overturned on appeal, was acquitted of firearms charges in his first trial. The majority notes that "[i]n addition," the *Bedoya* court relied on *People v. Overton*, 281 Ill. App. 3d 209 (1996), a case in which it reversed an armed robbery conviction "based on the erroneous admission of other-crimes evidence." *Supra* ¶ 31. While acknowledging that the *Bedoya* court's discussion of the acquittal was "arguably *dicta*," the majority would nevertheless give this discussion "considerable weight" as judicial *dicta*. *Supra* ¶ 29.

¶ 116 The majority's discussion obscures the actual basis for the decision in *Bedoya* and elevates *dicta* of the appellate court to the level of deserving deference by this court.

¶ 117 The *Bedoya* court granted the defendant a new trial because the jury heard testimony that before he was involved in an altercation with a bouncer at a bar that resulted in the bouncer's death, he was "wildly firing at random buildings from a moving car." *Bedoya*, 325 Ill. App. 3d at 939. These two incidents were not sufficiently similar to justify admission of the earlier gunplay for the nonpropensity purpose of showing intent to murder the bouncer. *Id.* at 939. Not only was the other-crimes evidence irrelevant to the murder charge, the "detail and repetition" of the other-crimes evidence "served no purpose other than to inflame the jury." *Id.* at 940-41.

¶ 118 In its discussion of whether this error required reversal of the murder conviction and a new trial, the *Bedoya* court mentioned the trial court's failure to give a timely limiting instruction and its refusal to tell the jury that *Bedoya* had been acquitted of charges that he fired his gun at three buildings prior to shooting the bouncer. *Id.* at 940. The court also noted that the United States Supreme Court in *Dowling v. United States* "made a point of saying the trial judge did tell the jury the defendant had been acquitted of the other offenses." *Id.* at 942-43 (citing *Dowling v. United States*, 493 U.S. 342, 346 (1990)).

¶ 119 However, in *Dowling*, the Supreme Court merely noted in its summary of the facts of the case, before beginning its analysis, that when the complaining witness in the earlier case "left the stand, the District Court instructed the jury that petitioner had been acquitted of robbing [her], and emphasized the limited purpose for which [her] testimony was being offered." *Id.* At no point in the Supreme Court's analysis of the constitutional issues in *Dowling* or in its holding did it mention the fact that the jury was informed of the prior acquittal. Thus, the significance attached by the *Bedoya* court to the brief mention of the *Dowling* jury's having been told of the acquittal is not justified. Nevertheless, the *Bedoya* court concluded that "[f]airness required disclosure" of the acquittal to the jury, in part because the limiting instruction given at the close of the case could have left the jury with the false impression that the firearms offenses were "alive and pending." *Id.* at 943.

¶ 120 The entire discussion of evidence of acquittal in *Bedoya* is *dicta*, because it had no bearing on the determinative issue in the case. The appellate court failed to recognize that once it determined that admission of evidence that the defendant shot at several buildings

-20-

was reversible error, the defendant's acquittal of the firearms offenses became entirely irrelevant. This was not a situation in which the appellate court addressed an issue in *dicta* because the issue was likely to come up on remand. Because the other-crimes evidence was to be excluded on retrial, there would have been no need for the trial court to consider the admissibility of evidence of the acquittal.

¶ 121    The present case is readily distinguished from *Bedoya* because the other-crimes evidence of the attack on L.S. was properly admitted at trial. Thus, *Bedoya*'s *dicta* that "fairness requires disclosure" of acquittal after other-crimes evidence has been improperly admitted offers no support for defendant's position.

¶ 122    The majority, however, concludes that this discussion "constituted an extensive and integral part of the court's decision." *Supra* ¶ 29. The discussion was neither extensive (it consisted of less than a full page) nor integral to the decision. Nevertheless, the majority characterizes the *Bedoya* court's brief discussion of this question as "judicial *dicta* \*\*\* warranting considerable weight," citing *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 100 (2004). *Supra* ¶ 29. In *Hawes*, this court said that judicial *dicta* "have the force of a determination by a reviewing court and should receive dispositive weight *in an inferior court*." (Emphasis added.) *Hawes*, 212 Ill. 2d at 100.

¶ 123    As we are not an inferior court, we need not give any weight at all to this *dicta*. Indeed, this court does not owe any deference to holding of the appellate court, let alone its *dicta*. Further, even if we were inclined to cite *Bedoya* with approval, it stands only for the narrow proposition that when other-crimes evidence is found to have been improperly admitted, that error may be rendered harmless by proper and timely limiting instructions and evidence that the defendant was acquitted of the alleged other crimes.

¶ 124    Defendant's reliance on *Overton* is similarly misplaced. In *Overton*, the defendant was on trial for the armed robbery of a gas station. He had previously been tried and acquitted for two similar gas station robberies. The State was allowed to present evidence suggesting the defendant's involvement in one of the other crimes. *Overton*, 281 Ill. App. 3d at 211. The appellate court concluded that the State failed to show the relevance of the other-crimes evidence for the nonpropensity purpose of showing *modus operandi*. *Id.* at 216. Thus, admission of the other-crimes evidence was error. After observing that "the jury was never informed of defendant's acquittal," the court found that the State failed to show that "the evidence was not prejudicial" and ordered that the defendant be given a new trial. *Id.* at 216-17. Again, the clear implication was that the error might have been deemed harmless if the jury had been informed of the acquittal.

¶ 125    The majority's summary of *Overton* (*supra* ¶ 32) fails to note that the appellate court did not hold that when other-crimes evidence is properly admitted, it is error to exclude acquittal evidence. Instead, *Overton* and *Bedoya* both stand for the proposition that when other-crimes evidence is admitted in error, admission of acquittal evidence may cure the resulting prejudice. Neither case supports the proposition that it is reversible error to bar evidence of acquittal when, as here, other-crimes evidence was properly admitted for a proper purpose and the jury was properly instructed.

Harmless-Error Analysis

¶ 127    The State argues that any error in excluding evidence of the acquittal was harmless, noting that the jury was repeatedly instructed as to the proper use of L.S.'s properly admitted testimony.

¶ 128    Because I do not agree with the majority that the trial court abused its discretion, I would not reach the State's harmless-error argument. However, the majority's resolution of this issue calls into question the correctness of the jury instruction (*supra* ¶ 49), so I address only this part of the harmless-error analysis.

¶ 129    As the majority notes, the trial court admonished the jury prior to L.S.'s testimony that it was to "determine whether the defendant was involved in that offense and if so, what weight should be given to the evidence on this issue." *Supra* ¶ 11. This instruction was repeated after L.S. testified and, "both orally and in writing, before the jury began its deliberations." *Supra* ¶ 15.

¶ 130    The majority gives substantial weight to the "repeated references to defendant's prior 'offense' [which] implicitly supported a jury inference that defendant had been charged, and perhaps even convicted, on L.S.'s claims." *Supra* ¶ 45. In its harmless-error analysis, the majority concludes that "the language of that instruction likely led the jury to speculate about the outcome of the proceedings on defendant's prior 'offense.' " *Supra* ¶ 49. The implication is that use of the word "offense" in the jury instruction subtly communicated to the jury that defendant had been charged and convicted of a crime.

¶ 131    Each of the terms "crime," "conviction," and "offense" has a "plain meaning within a jury's common understanding." See *People v. Hope*, 137 Ill. 2d 430, 493 (1990). The average juror understands that while one may be accused by a witness of having committed an offense, he has not necessarily been charged or convicted of a crime. The average juror should also understand that not all offenses are crimes. Some offenses are sins or insults, but are not crimes. See, *e.g.*, Webster's II New College Dictionary 759 (1999) (defining "offense" as a "breach of a social or moral code: SIN"; a "violation of the law: CRIME"; or "[s]omething that outrages moral sensibilities").

¶ 132    Thus, the use of the word "offense" in the jury instruction does not carry the weight the majority ascribes to it. The jury was told to determine, based on its own assessment of L.S.'s credibility, whether defendant committed the offense she described and, if so, how much weight to give to that fact when considering his propensity to commit the crime charged and his defense of consent. The majority's reliance on this single word in the instruction calls into question the appropriateness of the jury instruction in all future cases.

¶ 133    Unintended Consequences

¶ 134    The majority holds that the trial court's ruling barring admission of evidence of defendant's prior acquittal was "unreasonable under the facts and circumstances of this case." *Supra* ¶ 48. Yet it is not clear what facts and circumstances are referred to. However, by stating, earlier in the opinion, that evidence of an acquittal is part of the "context" of the other offense, the majority implies that acquittal evidence must be admitted when other-crimes evidence is admitted under section 115–7.3. The majority has, in effect, created a new

rule of evidence that is not contained in section 115–7.3 itself and is not supported by the Illinois Rules of Evidence.

¶ 135　　Further, the *dicta* in *Bedoya* that is given such weight by the majority, combined with the majority's holding, suggests that evidence of an earlier acquittal must always be admitted when other-crimes evidence is used because the earlier trial has become part of the context of the earlier offense. This implicitly expands this new rule to application when other-crimes evidence is properly admitted for a nonpropensity purpose. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith except as provided by [statute]. Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").

¶ 136　　Thus, in a future case, when the State is allowed to use other-crimes evidence to show the defendant's identity (see, *e.g.*, *People v. Robinson*, 167 Ill. 2d 53, 65 (1995) (evidence that defendant previously attacked other similar victims in similar manner properly admitted under theory of *modus operandi* to show identity of perpetrator in prosecution for armed robbery and armed violence)), or for any of the other permissible nonpropensity purposes, the trial court will have no discretion to disallow evidence of an acquittal even when, as here, the jury will hear testimony from the alleged victim of the other crime and will be able to make its own assessment of her credibility.

¶ 137　　For this and all of the foregoing reasons, I respectfully dissent.


¶ 138　　JUSTICES THOMAS and KARMEIER join in this dissent.