NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170941-U

NO. 4-17-0941

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 6, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| LC NORMAN, | ) | No. 16CF106 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant is entitled to a new trial on all the charges in this case where the circuit court considered testimony of a witness who did not testify at his bench trial in finding defendant guilty.

¶ 2    In June 2016, a grand jury indicted defendant, LC Norman, with three counts of unlawful possession of a controlled substance with the intent to deliver and three counts of unlawful possession of a controlled substance. After a three-day bench trial, the Logan County circuit court found defendant guilty of all six charges. In August 2017, defendant filed a motion for a new trial and later an amended motion for a new trial. At a joint September 2017 hearing, the court denied defendant's amended motion for a new trial and sentenced defendant to concurrent prison terms of 30 years for count I, 15 years for count III, 15 for count IV, and 6 years for count V (count II merged with count I and count VI merged with count IV). In October 2017, defendant filed a motion to reconsider his sentence, which the court granted in part and

denied in part. The court found count V merged with count III and vacated defendant's sentence on count V.

¶ 3　　　　Defendant appeals, asserting (1) he is entitled to a new trial because the circuit court relied on improper evidence in finding him guilty, (2) he was denied ineffective assistance of counsel because counsel failed to object to the admission of Patrick Fry's out-of-court statements implicating defendant, and (3) the State failed to present a sufficient chain of custody for a cellular telephone (cellphone) and its contents. We reverse on defendant's first argument and remand all six charges for a new trial.

¶ 4　　　　　　　　　　　　　I. BACKGROUND

¶ 5　　　　The grand jury's June 2016 indictment alleged six counts, four of which related to a June 2016 incident and two of which related to an August 2015 incident. Count I charged that, on or about June 7, 2016, defendant committed unlawful possession of a controlled substance with the intent to deliver, in that defendant knowingly possessed with the intent to deliver 100 grams or more but less than 400 grams of a substance containing cocaine. 720 ILCS 570/401(a)(2)(B) (West Supp. 2015). Count II charged that, on or about June 7, 2016, defendant committed unlawful possession of a controlled substance, in that defendant knowingly possessed 100 grams or more but less than 400 grams of a substance containing cocaine. 720 ILCS 570/402(a)(2)(B) (West Supp. 2015). Count III alleged that, on or about June 7, 2016, defendant committed unlawful possession of a controlled substance with the intent to deliver, in that defendant knowingly possessed with the intent to deliver 1 gram or more but less than 15 grams of a substance containing heroin. 720 ILCS 570/401(c)(1) (West Supp. 2015). Count V contended that, on or about June 7, 2016, defendant committed unlawful possession of a controlled substance, in that defendant knowingly possessed a substance containing heroin. 720

ILCS 570/402(c) (West Supp. 2015). Count IV alleged that, on or about August 22, 2015, defendant committed unlawful possession of a controlled substance with the intent to deliver, in that defendant knowingly possessed with the intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine. 720 ILCS 570/401(c)(2) (West 2014). Count VI alleged that, on or about August 22, 2015, defendant committed unlawful possession of a controlled substance, in that defendant knowingly possessed a substance containing cocaine. 720 ILCS 570/402(c) (West 2014).

¶ 6        In March 2017, defendant filed a motion for severance, seeking to have counts IV and VI tried separately from counts I, II, III, and V. On March 29, 2017, the circuit court held a hearing on the motion for severance. The State argued the events were separate in dates only and contended all the charges were part of defendant's common scheme or method of operation. It explained defendant had a common method of sending money, receiving money, and delivering drugs back into the area. The State also contended the evidence of the August 2015 offenses would be admissible at a trial on the June 2016 offenses and vice versa. The court denied defendant's motion, finding that, while the investigation did focus on local individuals, the primary purpose of the investigation was the source of the contraband that the individuals were selling. It also found some merit to the argument the offenses on the different dates would be admissible at both trials.

¶ 7        On May 19, 2017, the circuit court commenced the bench trial on all six charges against defendant. The State presented the testimony of (1) Esther Toirot, a customer service manager at Wal-Mart; (2) Raymond Gondek, an employee of the Illinois State Police working in computer forensics; (3) Christopher Parrish, a purchaser of controlled substances from defendant; (4) Julia Edwards, a drug chemist for the Illinois State police; (5) Haley Renfro, a

friend of Fry and defendant; (6) Ryan Sullivan, a Lincoln police officer; (7) Terry Helton, a person who sold drugs for Fry; (8) Kristin Stiefvater, a drug chemist at the Illinois State Police crime laboratory; (9) Brian Long, a forensic scientist with the Illinois State Police crime laboratory; (10) John Carnes, a forensic scientist with the Illinois State Police crime laboratory; and (11) Matthew Comstock, a detective sergeant with the Lincoln police department. The State also presented more than 60 exhibits. Defendant did not present any witness testimony but did present several exhibits. Only the evidence relevant to the issue addressed on appeal is set forth below.

¶ 8        Toirot testified about one of the services Wal-Mart offers its customers. Wal-Mart allows customers to transfer money to other individuals who can receive the transfer at a different Wal-Mart. Toirot explained the process as well as the forms and receipts generated during the process. Toirot also testified Wal-Mart employees can fill out a money services activity report when there is suspicious activity related to the money transfers. Toirot's testimony laid the foundation for the State's exhibit Nos. 1 through 23, which were receipts, forms, and money services activity reports from the Wal-Mart in Lincoln, Illinois. Some of the forms and receipts expressly showed transfers of money from Parrish to defendant and from Fry to defendant. Some of the forms showed transfers from Parrish or Fry to other names with defendant's cellphone number. For the documents that had dates, the dates of the documents were between May 1, 2015, to August 20, 2015.

¶ 9        Detective Sergeant Comstock further testified he was also an inspector for the Central Illinois Enforcement Group, which was an Illinois State Police run drug task force group. He was familiar with the narcotics investigation involving Parrish, Fry, and defendant. The investigation of those three individuals was ongoing when law enforcement arrested Parrish on

August 19, 2015, after a traffic stop near Springfield, Illinois. During the traffic stop, Parrish had thrown 1½ ounces of cocaine out the window and had $13,500 in cash on him. As part of his narcotics investigation, Detective Sergeant Comstock had placed a global positioning system (GPS) device on Parrish's vehicle about 10 days before Parrish's August 2015 arrest. Additionally, at the time of Parrish's arrest, Fry had recently been arrested on a gun charge, but Detective Sergeant Comstock did not know if Fry was still in custody when Parrish was arrested.

¶ 10            Detective Sergeant Comstock further testified he interviewed Parrish after Parrish's August 2015 arrest. Parish told Detective Sergeant Comstock defendant was his supplier and Parish would often provide defendant transportation to and from Chicago. Parrish agreed to work with Detective Sergeant Comstock. Parrish was facing criminal charges, and they agreed Parrish would receive consideration in his case based upon any information or assistance Parrish could provide law enforcement. The next day, Detective Sergeant Comstock gave Parrish money to acquire narcotics from defendant. The plan was for Parrish to send the money to defendant and then, at a mutually agreed upon day and time, Parrish would pick up defendant and bring him back to Lincoln with the drugs. At around 1:30 a.m. on August 22, 2015, law enforcement stopped Parrish's vehicle as it arrived back in Logan County. The police removed both defendant and Parrish from the vehicle. The police then searched the vehicle and found a substance underneath the cupholders, which subsequently tested positive for cocaine and weighed 13.7 grams. Defendant was placed under arrest, and his cellphone was collected and placed into evidence. Defendant's cellphone was admitted as State's exhibit No. 33. The court also admitted as State's exhibit No. 34 the report of the data on the cellphone, which was obtained by Gondek, the computer forensic expert.

¶ 11            According to Detective Sergeant Comstock's testimony, he interviewed defendant

on August 24, 2017, after defendant waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant admitted knowing both Fry and Parrish and receiving money grams from both of them. Defendant explained Parish and Fry were his friends and would send him money from time to time when he needed it. Defendant also admitted receiving the money transfer from Parrish that occurred a few days earlier. Defendant eventually bonded out and a grand jury later indicted defendant for his actions as outlined in counts IV and VI in this case.

¶ 12 Moreover, Detective Sergeant Comstock testified his investigation of defendant continued into the summer of 2016. As with Parrish, Detective Sergeant Comstock placed a GPS device on Fry's vehicle in April 2016. On June 7, 2016, Detective Sergeant Comstock followed a vehicle driven by Fry. He followed the vehicle into a Wendy's restaurant in Pontiac, Illinois. At the Wendy's restaurant, Detective Sergeant Comstock observed Fry and Renfro exit the vehicle. When they returned to the vehicle, defendant got in the vehicle as well. Fry's vehicle left Wendy's and got onto Interstate 55 traveling south towards Lincoln. Detective Sergeant Comstock continued to follow the vehicle. When Fry's vehicle arrived back in Lincoln, other police officers attempted to conduct a traffic stop of Fry's vehicle. Fry's vehicle fled and did not stop. Police officers later found the vehicle unoccupied.

¶ 13 Detective Sergeant Comstock further testified law enforcement made contact with Renfro and, based on the information she provided, began looking for evidence along Lincoln Parkway purported to have been thrown from Fry's vehicle. A police officer found a whitish colored plastic bag, which contained a substance that appeared to be pure cocaine cut directly from a kilo and a substance that appeared to be heroin. Those items were subsequently tested and determined to be 124.3 grams of a substance containing cocaine and 9.9 grams of a substance containing heroin.

¶ 14      Parrish testified he met defendant through a mutual friend and had known him for three years at the time of trial.  At first, defendant would pay Parrish to drive him back and forth between Chicago and Lincoln.  Later, defendant began paying Parrish with cocaine for Parrish's personal use.  In late 2014, Parrish began selling drugs he obtained from defendant.  Initially, defendant would front Parrish the drugs, and Parrish would send defendant money after he sold the drugs.  Later, Parrish began paying for the drugs up front using Wal-Mart to Wal-Mart money transfers.  Parrish testified he had obtained the cocaine he had at the time of the Springfield traffic stop from defendant about three days to a week before the stop.

¶ 15      Moreover, Parrish testified Fry was a friend of his and they sold drugs together.  Fry would give Parrish money, and Parrish would get a larger amount of drugs from defendant and then split that amount.  Parrish and Fry were collaborating before the police stopped Parrish's car in Springfield in August 2015.

¶ 16      After hearing the evidence and the parties' arguments, the circuit court found defendant guilty of all six charges.  In explaining its decision, the court listed Fry as a witness and made multiple references to Fry's testimony and credibility.  Defendant filed a motion for a new trial, asserting, *inter alia*, the circuit court erred by denying defendant's motion to sever the two August 2015 counts from the other four counts and ruling Renfro's testimony corroborated Fry's testimony when Fry did not testify at trial.  Defendant later filed a first amended motion for a new trial, which included the aforementioned allegations.

¶ 17      On September 26, 2017, the circuit court held a joint hearing on defendant's first amended motion for a new trial and sentencing.  After the parties' arguments on defendant's motion, the court denied the motion.  The court then addressed sentencing.  The State did not present any evidence in addition to the presentence investigation report.  Defendant offered

letters from his relatives as mitigation evidence. After hearing the parties' recommendations, the court explained its sentence. In doing so, the court mentioned defendant exchanged large amounts of cash back and forth from several individuals including Fry and Parrish. The court also pointed out defendant was released from jail after being caught possessing drugs with Parrish and a few months later defendant was caught again with Fry. As to defendant's specific sentences, the court noted it would not sentence defendant on count II because it merged with count I and count VI because it merged with count IV. The court then sentenced defendant to concurrent prison terms of 30 years for count I, 15 years for count III, 15 years for count IV, and 6 years for count V.

¶ 18     In October 2017, defendant filed a timely motion to reconsider his sentence, asserting count V should have merged with count III and the remaining sentencings were excessive. The State conceded count V should have merged with count III. After a December 19, 2017, hearing, the circuit court agreed with the parties and vacated defendant's sentence on count V. The court denied the motion to reconsider in all other respects.

¶ 19     On December 20, 2017, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017). Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 20                              II. ANALYSIS

¶ 21     It is well-established a criminal defendant has a fundamental due process right to a fair trial which is protected by both federal and state constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2). *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 69, 104 N.E.3d 1251. When a bench trial is conducted, the circuit court is presumed to have considered only competent evidence and that presumption will only be rebutted by affirmative evidence in the record.

- 8 -

*Joiner*, 2018 IL App (1st) 150343, ¶ 69.  Our supreme court has found a defendant was deprived of his right to a fair trial where the record contained affirmative evidence the circuit court failed to correctly recall and consider evidence critical to fully understanding and evaluating the defendant's defense strategy at trial.  See *People v. Mitchell*, 152 Ill. 2d 274, 323, 604 N.E.2d 877, 901 (1992).  Whether a defendant's due process rights have been violated presents a question of law, which is subject to *de novo* review.  *Joiner*, 2018 IL App (1st) 150343, ¶ 69.

¶ 22       Additionally, we note "due process violations are subject to a harmless error review."  *People v. Williams*, 2013 IL App (1st) 111116, ¶ 93, 2 N.E.3d 552.  "However, we may affirm only if, after considering all the other evidence, we can find that the error was harmless beyond a reasonable doubt."  *Williams*, 2013 IL App (1st) 111116, ¶ 93.  An error is considered harmless only if the State can demonstrate, beyond a reasonable doubt, the error did not contribute to the verdict.  *Williams*, 2013 IL App (1st) 111116, ¶ 93.

¶ 23       Defendant asserts his due process rights were violated because the circuit court in finding him guilty repeatedly relied on the testimony of Fry, who did not testify at defendant's bench trial.  The State concedes the circuit court violated defendant's due process rights by recalling Fry's "testimony" when Fry did not testify.  However, the State asserts the circuit court's reference to Fry's "testimony" was harmless error as to count IV, which was based on the August 2015 incident.  Specifically, the State contends Fry was in jail at the time of the August 2015 offense and thus was not a witness related to that offense.  In his reply brief, defendant disagrees with the State's assertion of harmless error, arguing (1) the circuit court at least minimally relied on the improper evidence and (2) the State invited the circuit court to consider all the evidence relating to both incidents in determining defendant's guilt of each individual charge.

¶ 24　　　　We agree with defendant the record shows the State invited the circuit court to consider the evidence of both the August 2015 incident and the June 2016 incident in finding defendant guilty of each individual charge, two of which related to the August 2015 incident and four of which related to the June 2016 incident.  The State was opposed to defendant's motion to sever the two counts related to the August 2015 incident from the four counts related to the June 2016 incident.  The State insisted the incidents were separate in dates only and contended the two incidents were one single transaction of events.  According to the State, defendant had a common scheme of supplying drugs to drug dealers in Lincoln and receiving payment from the drug dealers that persisted over time.  The State also asserted each incident would be admissible at the trial on the other incident as other crimes evidence showing a common scheme.

¶ 25　　　　At trial, the State presented evidence of a common scheme.  Defendant was with Parrish during the August 2015 incident and with Fry during the June 2016 incident.  The State's first witness at trial was Toirot who laid the foundation for the documents showing the transfer of money between defendant and Parrish and defendant and Fry.  Later, Parrish testified that, after he met defendant, he and Fry, at some point, began dealing drugs together.  Parrish would get money from Fry and buy larger amounts of cocaine from defendant and then split the cocaine.  Parrish testified the collaboration between himself and Fry started before Parrish's August 2015 traffic stop in Springfield.  Detective Sergeant Comstock testified defendant stated he was friends with both Fry and Parrish and admitted receiving money grams from both.  He also testified both Fry and Parrish were being investigated at the same time in August 2015 and the investigations were intertwined.

¶ 26　　　　Additionally, in finding defendant guilty of all six offenses, the circuit court expressly stated, "taking the evidence all together."  Thus, the court's improper reliance on Fry's

"testimony" affected all six charges, not just the four related to the June 2016 incident. Here, the State fails to show beyond a reasonable doubt the court's improper consideration of Fry's "testimony" did not contribute to the guilty finding on count IV. Accordingly, we find defendant is entitled to a new trial on all six charges.

¶ 27　　　　Since we are remanding for a new trial, we must consider whether another trial would violate the double-jeopardy clause. If the evidence presented at the first trial was sufficient for a rational trier of fact to find the State proved the essential elements of the crime beyond a reasonable doubt, a double jeopardy violation does not arise on retrial. See *People v. Ward*, 2011 IL 108690, ¶ 50, 952 N.E.2d 601. Here, the record contains sufficient evidence from which the circuit court could have found defendant guilty of all six charges beyond a reasonable doubt. Therefore, no double jeopardy violation will occur upon retrial. Additionally, since we have found defendant's first argument meritorious, we reverse on that ground alone and decline to decide the other issues raised.

¶ 28　　　　　　　　　　　　III. CONCLUSION

¶ 29　　　　For the reasons stated, we reverse the Logan County circuit court's judgment and remand for a new trial.

¶ 30　　　　Reversed; cause remanded.