# Illinois Official Reports

## Appellate Court

<div style="border: 2px solid black; padding: 10px;">

## *People v. Quickle*, 2020 IL App (3d) 170281

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD D. QUICKLE, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0281 |
| Filed | March 5, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 94-CF-30; the Hon. Stephen A. Kouri, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Santiago A. Durango, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Thomas D. Arado, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justices McDade and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1    In 1994, defendant Donald Quickle was convicted of first degree murder and armed robbery and sentenced to consecutive prison terms of 60 years and 30 years, respectively. In 2017, defendant filed a motion for leave to file a second successive postconviction petition, arguing that he was actually innocent of intentional murder. The trial court denied defendant's motion. We affirm.

¶ 2                                    FACTS

¶ 3    On January 27, 1994, the State filed a seven-count indictment against defendant. In the first six counts, the State charged defendant with intentional murder, knowing murder, and felony murder (720 ILCS 5/9-1(a)(1)-(3) (West 1994)) for shooting Larry Ederer (1) "with the intent to kill," (2) "with the intent to do great bodily harm," (3) "knowing his acts would cause *** death," (4) "knowing his acts created the strong probability of death," (5) "knowing his acts created the strong probability of great bodily harm," or (6) "while committing a forceable felony, [a]rmed [r]obbery." In count VII, the State charged defendant with armed robbery (*id.* § 18-2(a)) for taking Dawn Lohman's purse while armed with a handgun and "threatening the imminent use of force."

¶ 4    Defendant initially pled guilty but later withdrew his guilty plea. He was tried by a jury in 1999. The evidence at defendant's trial showed that on January 22, 1994, defendant and his brother, Kevin Quickle, waited outside Sheba's, a tavern in Creve Coeur, intending to rob the last patron to leave. Defendant was armed with a gun, and his brother was armed with a metal pipe.

¶ 5    Larry Ederer was the owner of Sheba's, and Dawn Lohman was employed there as a bartender. As Ederer walked Lohman to her car in the early morning hours of January 22, 1994, defendant and his brother approached them. Defendant brandished his gun and said he only wanted money. Defendant attempted to handcuff Ederer, and a struggle ensued. The struggle continued into the tavern. While Ederer and defendant struggled over defendant's gun, a shot was fired, hitting Ederer in the neck and causing him to fall to the ground.

¶ 6    Defendant then handcuffed Ederer, and defendant's brother handcuffed Lohman. Defendant took money from the cash register and coins from a safe. Defendant took Lohman's car keys and purse, and he and his brother fled in Lohman's vehicle. Lohman called 911. Ederer died before help arrived.

¶ 7    At the jury instruction conference, defendant asked the court for a separate verdict form for each of the six counts of murder alleged in the indictment. The State objected, and the trial court denied defendant's request. The jury was instructed on the theories of murder alleged in the indictment and given a general verdict form for murder. The jury found defendant guilty of murder and armed robbery. Defendant filed a motion for a new trial, which the trial court denied. The court sentenced defendant to consecutive prison terms of 60 years for murder and 30 years for armed robbery. Defendant filed a motion to reconsider his sentences, which the trial court denied.

¶ 8    Defendant appealed, and we affirmed defendant's convictions and sentences. *People v. Quickle*, No. 3-00-0057 (2001) (unpublished order under Illinois Supreme Court Rule 23). Shortly thereafter, defendant filed a *pro se* postconviction petition. The trial court appointed

defendant postconviction counsel. Defendant's counsel filed an amended postconviction petition, alleging ineffective assistance of trial counsel and denial of defendant's due process rights. The State filed a motion to dismiss. The trial court entered an order dismissing defendant's due process claim, based on waiver, but allowing his ineffective assistance claim to proceed. After an evidentiary hearing, the trial court denied defendant's ineffective assistance claim, finding that defendant's "[t]rial [c]ounsel was not deficient in any respect."

¶ 9     Defendant appealed, arguing that he was denied reasonable assistance of postconviction counsel. We agreed and remanded the case to the trial court with directions that new postconviction counsel be appointed and allowed to replead defendant's due process claim. *People v. Quickle*, No. 3-06-0864 (2008) (unpublished summary order under Illinois Supreme Court Rule 23).

¶ 10    Following remand, defendant's new postconviction counsel filed amended postconviction petitions, alleging ineffective assistance of appellate counsel. Following a third-stage evidentiary hearing, the trial court dismissed defendant's petition. Defendant appealed, and we affirmed the dismissal. *People v. Quickle*, 2012 IL App (3d) 100670-U.

¶ 11    One year later, defendant filed a motion for leave to file a successive postconviction petition, alleging that he was denied reasonable assistance of appellate counsel. The trial court summarily denied defendant's motion. Defendant appealed, and we affirmed. *People v. Quickle*, No. 3-14-0277 (2015) (unpublished order under Illinois Supreme Court Rule 23(c)).

¶ 12    In 2014, defendant filed a "Petition to Vacate Void Sentences" pursuant to section 2-1401(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2014)). The State filed a motion to dismiss. The trial court entered an order dismissing the petition. In 2015, defendant filed another petition for relief from judgment, pursuant to section 2-1401(f) of the Code. The State filed a motion to dismiss, and the trial court dismissed the petition.

¶ 13    In 2017, defendant filed a motion for leave to file his second successive postconviction petition. In his petition, defendant alleged that he was actually innocent of intentional murder under *People v. Smith*, 233 Ill. 2d 1 (2009). The trial court denied defendant's motion.

¶ 14                                    ANALYSIS

¶ 15    The Post-Conviction Hearing Act (Act) provides a method for a criminal defendant to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016). "A proceeding under the Act is a collateral attack on the judgment of conviction." *People v. Wrice*, 2012 IL 111860, ¶ 47.

¶ 16    Where, as here, a defendant seeks to institute a successive postconviction proceeding, the defendant must first obtain leave of court. *Id.*; 725 ILCS 5/122-1(f) (West 2016). We review *de novo* the trial court's denial of defendant's motion for leave to file a successive postconviction petition. *People v. Simmons*, 388 Ill. App. 3d 599, 606 (2009).

¶ 17    Both the language of the Act and case law make clear that only one postconviction proceeding is contemplated. *People v. Edwards*, 2012 IL 111711, ¶ 22. However, there are two bases upon which the bar against successive proceedings will be relaxed: (1) when a petitioner can establish "cause and prejudice" for failure to raise the claim earlier, and (2) when a petitioner shows "actual innocence." *Id.* ¶¶ 22-23. Here, defendant does not allege "cause and prejudice" in his postconviction petition but, instead, asserts an "actual innocence" claim.

- 3 -

¶ 18    The evidence in support of an actual innocence claim must be (1) newly discovered, (2) material and not merely cumulative, and (3) "of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 32. " '[A]ctual innocence' is not within the rubric of whether a defendant has been proved guilty beyond a reasonable doubt." *People v. Collier*, 387 Ill. App. 3d 630, 636 (2008) (citing *People v. Jones*, 362 Ill. App. 3d 31, 34 (2005)). "Rather, the hallmark of 'actual innocence' means 'total vindication,' or 'exoneration.' " *Id.* (citing *People v. Savory*, 309 Ill. App. 3d 408, 414-15 (1999)).

¶ 19    An acquittal alone is insufficient to prove actual innocence. See *Fink v. Banks*, 2013 IL App (1st) 122177, ¶ 25; *Moore v. Owens*, 298 Ill. App. 3d 672, 675 (1998); *Pulungan v. United States*, 722 F.3d 983, 985 (7th Cir. 2013); see also *Levine v. Kling*, 123 F.3d 580, 582 (7th Cir. 1997) ("an acquittal doesn't mean that the defendant did not commit the crime for which he was tried; all it means is that the government was not able to prove beyond a reasonable doubt that he committed it"). In fact, sometimes an acquittal is unrelated to a defendant's innocence. See *Herrera-Corral v. Hyman*, 408 Ill. App. 3d 672, 675 (2011); see also *Blackmon v. Williams*, 823 F.3d 1088, 1113 (7th Cir. 2016) (Posner, J., concurring in part and dissenting in part) ("some acquittals *** are based on reasons unrelated to guilt or innocence, such as lack of jurisdiction, violation of certain constitutional rights (for example, rights conferred by the Fourth Amendment), or expiration of the statute of limitations").

¶ 20    For purposes of the actual innocence exception, " 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). A claim of legal, rather than factual, innocence will not support an "actual innocence" claim. *Zavesky v. Miller*, 79 F.3d 554, 556-57 (7th Cir. 1996); *Boyer v. United States*, 55 F.3d 296, 300 (7th Cir. 1995); see *Spreitzer v. Schomig*, 219 F.3d 639, 648 (7th Cir. 2000). The actual innocence exception requires the defendant to establish that " 'he has a colorable claim of factual innocence.' " *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) (opinion of Powell, J., joined by Burger, C.J., and Rehnquist and O'Connor, JJ.)). An actual innocence claim "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "The required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to legal innocence as a result of legal error." *Gandarela v. Johnson*, 286 F.3d 1080, 1085 (9th Cir. 2001) (quoting *Kuhlmann*, 477 U.S. at 452).

¶ 21    In *Smith*, 233 Ill. 2d at 28-29, our supreme court held that when a defendant charged with intentional murder, knowing murder, and felony murder is denied his request for separate verdict forms and is found guilty of murder by a general verdict, for purposes of sentencing, the guilty verdict must be interpreted as a finding of guilt on the felony murder charge only. In *People v. Bailey*, 2013 IL 113690, ¶ 64, our supreme court held that a trial court's error in refusing a defendant's request for separate verdict forms requires that a general guilty verdict of first degree murder be viewed "as an acquittal on the counts of intentional and knowing murder."

¶ 22    Defendant argues that he falls within the "actual innocence" exception for successive postconviction petitions. He contends that, pursuant to *Smith* and *Bailey*, the general guilty verdict entered against him must be construed as an acquittal of knowing and intentional murder, making him innocent of those types of murder.

¶ 23 Even though the general guilty verdict entered against defendant is viewed as an acquittal of intentional and knowing murder (*id.*), defendant has failed to establish "actual innocence." Acquittal alone is insufficient to prove actual innocence. See *People v. Ward*, 2011 IL 108690, ¶ 111; *Fink*, 2013 IL App (1st) 122177, ¶ 25; *Moore*, 298 Ill. App. 3d at 675; *Pulungan*, 722 F.3d at 985; *Levine*, 123 F.3d at 582. In order for defendant to invoke the "actual innocence" exception, he has to show that he is factually innocent of knowing and intentional murder. See *Sawyer*, 505 U.S. at 339.

¶ 24 Here, defendant does not assert that he did not commit intentional or knowing murder. Instead, he argues that he is innocent of those crimes because of the trial court's error in giving the jury a general verdict form instead of six separate verdict forms, as he requested. We agree that the trial court erred in failing to provide the jury with separate verdict forms; the trial court's error, however, results in defendant's legal, not factual, innocence of intentional and knowing murder. See *Gandarela*, 286 F.3d at 1085. Legal innocence does not support a claim of actual innocence. See *Bousley*, 523 U.S. at 623-24; *Spreitzer*, 219 F.3d at 648; *Zavesky*, 79 F.3d at 556-57; *Boyer*, 55 F.3d at 300. Defendant does not assert that he is factually innocent of intentional or knowing murder; his actual innocence claim fails. See *Spreitzer*, 219 F.3d at 648; *Zavesky*, 79 F.3d at 556-57; *Boyer*, 55 F.3d at 300.

¶ 25 Because defendant cannot establish actual innocence and failed to allege cause and prejudice in his petition, the trial court properly denied defendant's motion for leave to file his second successive postconviction petition. See *Edwards*, 2012 IL 111711, ¶¶ 22-23.

¶ 26                                    CONCLUSION
¶ 27 The judgment of the circuit court of Tazewell County is affirmed.

¶ 28 Affirmed.