NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220844-U

NO. 4-22-0844

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 14, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| DONALD D. QUICKLE, | ) | No. 94CF30 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Stephen A. Kouri, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Cavanagh and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed a judgment denying defendant leave to file a third successive postconviction petition. The defendant failed to make a *prima facie* showing of "cause."

¶ 2    Defendant, Donald D. Quickle, appeals an order denying his motion for leave to file a third successive postconviction petition. We affirm, as defendant failed to make a *prima facie* showing of "cause."

¶ 3                              I. BACKGROUND

¶ 4                         A. Trial and Direct Appeal

¶ 5    On January 22, 1994, defendant and his brother robbed a bar in Creve Coeur. During the course of that robbery, the bar's owner, Larry Ederer, sustained a fatal gunshot wound from defendant's gun as Ederer struggled with defendant. A bartender—Dawn Lohman—and

defendant provided conflicting accounts of how the shooting occurred and who controlled the gun when it fired.

¶ 6        A grand jury returned a seven-count indictment. The first six counts charged defendant with first degree murder under alternative theories (720 ILCS 5/9-1(a)(1)-(3) (West 1994)). Specifically, the indictment alleged defendant shot Ederer "with the intent to kill" (count I), "with the intent to do great bodily harm" (count II), "knowing his acts would cause *** death" (count III), "knowing his acts created the strong probability of death" (count IV), "knowing his acts created the strong probability of great bodily harm" (count V), and "while committing a forceable [*sic*] felony, Armed Robbery" (count VI). Count VII of the indictment alleged defendant committed armed robbery (720 ILCS 5/18-2(a) (West 1994)) in that, "while armed with a dangerous weapon, a handgun, [he] took property, a purse, from the presence of Dawn Lohman by threatening the imminent use of force."

¶ 7        The matter proceeded to a jury trial in 1999. During the instructions conference, the defense requested separate verdict forms for each count of first degree murder to differentiate the various mental states alleged in the indictment. The State, by contrast, requested general guilty and not guilty verdict forms for first degree murder. The trial court instructed the jury with the State's forms. Thus, the jury received four verdict forms: (1) guilty of first degree murder, (2) not guilty of first degree murder, (3) guilty of armed robbery, and (4) not guilty of armed robbery. The jury found defendant guilty of both first degree murder and armed robbery.

¶ 8        In his posttrial motion, defendant argued, *inter alia*, that "[t]he Court erred in refusing to give separate jury instructions for each offense of first degree murder." The trial court denied defendant's posttrial motion. The court sentenced defendant to consecutive prison terms of 60 years for first degree murder and 30 years for armed robbery.

¶ 9        The Third District of the Illinois Appellate Court affirmed the judgment on direct appeal. *People v. Quickle*, No. 3-00-0057 (2001) (unpublished order under Illinois Supreme Court Rule 23). Defendant did not challenge the verdict forms on direct appeal.

¶ 10                    B. Initial Postconviction Proceedings

¶ 11        As explained below, defendant's initial postconviction proceedings took nine years to resolve. During that time, defendant never challenged his verdict forms.

¶ 12        Specifically, in July 2001, defendant filed a *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2000)). The trial court advanced that petition to the second stage of proceedings and appointed counsel for defendant. After an extended period of inactivity in the case, in September 2006, defendant, represented by counsel, filed an amended petition. In November 2006, the court dismissed some of defendant's claims on the State's motion and denied the petition as to other claims after an evidentiary hearing. In September 2008, the Third District reversed and remanded for further postconviction proceedings, determining that defendant's postconviction counsel provided unreasonable assistance by failing to present defendant's claims in a way that overcame procedural impediments. *People v. Quickle*, No. 3-06-0864 (2008) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 13        In October 2009, defendant, through new counsel, filed a second amended postconviction petition. In May 2010, defendant, through counsel, filed a third amended postconviction petition adding two more claims. In August 2010, the trial court denied defendant's third amended petition following a third-stage hearing. The Third District affirmed that judgment, rejecting defendant's contention that his postconviction counsel appointed on remand provided unreasonable assistance. *People v. Quickle*, 2012 IL App (3d) 100670-U, ¶ 3.

¶ 14                                  C. *People v. Smith*

¶ 15            Meanwhile, on April 2, 2009, our supreme court filed its decision in *People v. Smith*, 233 Ill. 2d 1 (2009), which involved consolidated appeals. Both defendants in *Smith* were charged with intentional murder, knowing murder, and felony murder, along with the predicate offenses for the felony murder charges. *Smith*, 233 Ill. 2d at 5. In both cases, the trial courts denied the defendants' requests for separate verdict forms relating to the various murder counts. *Smith*, 233 Ill. 2d at 5. In both cases, the juries returned general verdicts finding the defendants guilty of first degree murder and the underlying felony offenses. *Smith*, 233 Ill. 2d at 5. In both cases, the trial courts sentenced the defendants as if they had been found guilty of intentional murder (*i.e.*, the courts imposed convictions for both murder and the underlying felonies). *Smith*, 233 Ill. 2d at 5.

¶ 16            On direct appeal, the parties disagreed whether it was appropriate to deny requests for more specific verdict forms and then sentence the defendants as if they were convicted of intentional murder. *Smith*, 233 Ill. 2d at 13-15. Our supreme court first explained that " 'the different theories embodied in the first degree murder statute [citation] are merely different ways to commit the same crime.' " *Smith*, 233 Ill. 2d at 16 (quoting *People v. Cooper*, 194 Ill. 2d 419, 429 (2000)). Accordingly, the court recognized "it is constitutionally permissible for jurors to return a general verdict of guilty even if there is no juror unanimity with regard to *the means* by which the murder was committed." (Emphasis in original.) *Smith*, 233 Ill. 2d at 16.

¶ 17            Nevertheless, our supreme court explained that "there may be different sentencing consequences based on the specific theory of murder proven." *Smith*, 233 Ill. 2d at 17. One consequence the court mentioned was that a defendant convicted of felony murder may not also be convicted of the underlying felony. *Smith*, 233 Ill. 2d at 17. In contrast, a defendant found guilty

of intentional or knowing murder may be convicted and sentenced on "any additional charged offenses." *Smith*, 233 Ill. 2d at 18.

¶ 18    The supreme court then considered the " 'one good count rule.' " *Smith*, 233 Ill. 2d at 18-19. Under that rule, where the State charges all available murder theories and the jury returns a general guilty verdict, the verdict is interpreted as being a conviction of intentional murder. *Smith*, 233 Ill. 2d at 20-21. Notwithstanding this general rule, the supreme court agreed with the defendants that it would violate due process to presume they were convicted of intentional murder after the trial courts denied them the opportunity to present their theory that they were guilty only of felony murder. *Smith*, 233 Ill. 2d at 23.

¶ 19    Accordingly, the supreme court held that "where *** specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must be provided upon request and the failure to provide them is an abuse of discretion." *Smith*, 233 Ill. 2d at 23. The court further held that error of this nature is not subject to harmless-error review. *Smith*, 233 Ill. 2d at 25. The court determined that "because defendants were prevented from obtaining a ruling on their theory that they were guilty only of felony murder and not intentional murder, the appropriate remedy is to interpret the general verdict as a finding on felony murder." *Smith*, 233 Ill. 2d at 28. Thus, the court vacated the defendants' convictions of the offenses that were the predicates for the felony murder convictions. *Smith*, 233 Ill. 2d at 29.

¶ 20                         D. *People v. Bailey*

¶ 21    On March 21, 2013, our supreme court filed its decision in *People v. Bailey*, 2013 IL 113690. Like *Smith*, *Bailey* was a direct appeal from the trial court's denial of a defendant's request for separate verdict forms to differentiate the State's theories of first degree murder. *Bailey*,

2013 IL 113690, ¶ 1. However, due to the complex factual and procedural history of Bailey's case, "[t]he link between the verdict forms and sentencing [was] not as clear-cut" as it was in *Smith*. *Bailey*, 2013 IL 113690, ¶ 21. Ultimately, the supreme court determined that the failure to provide separate verdict forms as to the murder charges had sentencing consequences for Bailey, because his sentence of natural life in prison would have been unauthorized had the jury found him guilty of felony murder but not guilty of intentional or knowing murder. *Bailey*, 2013 IL 113690, ¶¶ 55-57, 65. Thus, the supreme court applied the rule it had announced in *Smith*. *Bailey*, 2013 IL 113690, ¶ 64.

¶ 22                                 E. Defendant's Subsequent Collateral Challenges

¶ 23        In June 2013, defendant sought leave to file a successive postconviction petition, raising a claim that is unrelated to the present appeal. The trial court denied leave to file that petition, and the Third District affirmed. *People v. Quickle*, No. 3-14-0277 (2015) (unpublished order under Illinois Supreme Court Rule 23).

¶ 24        In April 2014, defendant filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2014)) to vacate his allegedly void sentence. One of defendant's arguments relied on the reasoning of *Smith* and *Bailey*. Specifically, defendant alleged that the jury's general guilty verdict as to first degree murder "made it impossible to determine whether the jury had acquitted [him] of intentional or knowing murder." Defendant maintained that the remedy was to interpret the verdict "as a finding of felony murder and an acquittal of intentional or knowing murder, thus barring a finding of the [illegible] factor—armed robbery and this sentence." In May 2014, the trial court granted the State's motion to dismiss defendant's section 2-1401 petition, determining the judgment was not void. The Third District

affirmed. *People v. Quickle*, No. 3-14-0472 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 25        In June 2015, defendant filed a second petition pursuant to section 2-1401 of the Code, raising arguments that are unrelated to the present appeal. Defendant withdrew that petition but then refiled it. In February 2016, the trial court granted the State's motion to dismiss the petition. The Third District affirmed. *People v. Quickle*, No. 3-16-0074 (2018) (unpublished order under Illinois Supreme Court Rule 23).

¶ 26        In March 2017, defendant sought leave to file a second successive postconviction petition. Relying on *Smith* and *Bailey*, defendant raised essentially the same claim he had raised in his 2014 section 2-1401 petition. However, instead of arguing the judgment was void, defendant contended that the jury's general guilty verdict for first degree murder meant that he was "actually innocent" of intentional murder. The trial court denied leave for defendant to file this second successive postconviction petition. The Third District affirmed. *People v. Quickle*, 2020 IL App (3d) 170281. The appellate court reasoned that "[e]ven though the general guilty verdict entered against defendant is viewed as an acquittal of intentional and knowing murder [citation], defendant has failed to establish 'actual innocence.' " *Quickle*, 2020 IL App (3d) 170281, ¶ 23. To that end, although "the trial court erred in failing to provide the jury with separate verdict forms," such error resulted in "defendant's legal, not factual, innocence of intentional and knowing murder." *Quickle*, 2020 IL App (3d) 170281, ¶ 24. According to the court, "[l]egal innocence does not support a claim of actual innocence." *Quickle*, 2020 IL App (3d) 170281, ¶ 24. The court concluded, "Because defendant cannot establish actual innocence *and failed to allege cause and prejudice in his petition*, the trial court properly denied defendant's motion for leave to file his second successive postconviction petition." (Emphasis added.) *Quickle*, 2020 IL App (3d) 170281, ¶ 25.

¶ 27                      F. The Order Giving Rise to the Present Appeal

¶ 28            In June 2022, defendant sought leave to file a third successive postconviction petition, which is the subject of the present appeal. Again relying on *Smith* and *Bailey*, defendant raised essentially the same claim he had raised in 2014 and 2017. However, instead of arguing that the use of general verdict forms rendered the judgment void or resulted in his "actual innocence" of intentional murder, defendant invoked the "cause-and-prejudice" test. See 725 ILCS 5/122-1(f) (West 2022) (authorizing a successive postconviction petition where "a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure"). Specifically, defendant argued that the supreme court's decisions in *Smith* and *Bailey* constituted "cause" because "they were not available earlier (at the time of trial) to counsel," and these decisions changed Illinois law. With respect to "prejudice," defendant alleged:

> "the new rule announced in *Smith* and *Bailey* are new substantive rules that retroactively apply to the defendant's sentencing hearing in which the defendant was convicted and sentenced for the underlying felony of armed robbery carrying a 30 year sentence to be served consecutively, a sentence that the State can no longer impose under the *Smith*/*Bailey* rule."

As his relief, defendant requested the trial court (1) "to interpret the general verdict as a finding on felony murder," and (2) "to vacate the defendant's conviction and sentence for the underlying felony" [*i.e.*, armed robbery]. Defendant subsequently filed an amended petition containing the same arguments.

¶ 29            On August 30, 2022, the trial court denied defendant leave to file a third successive postconviction petition. The court noted that the Third District rejected "a very similar" claim in

defendant's most recent appeal. Consequently, the court determined that defendant had not met the cause-and-prejudice test, explaining:

> "[Defendant] cannot establish any objective factor that impeded his ability to raise such claims contained therein in his initial [postconviction petition]. For example, Defendant has been well aware of any issues with alleged jury instructions, jury voir dire, sentencing statute, and consideration evidenced by his previous pleadings. Any reference in the current pleading to the defendant's lack of understanding as to the law in this area does not afford him relief either."

Defendant timely appealed this order.

¶ 30                                    II. ANALYSIS

¶ 31        Defendant argues that the trial court erroneously denied his motion for leave to file a third successive postconviction petition. According to defendant, the "new substantive rule" announced in *Smith* and *Bailey* constituted "cause" and "prejudice" justifying the petition. In support of his contention that this new rule applies retroactively to cases on collateral review, defendant asks us to find persuasive the reasoning in *People v. Price*, 2020 IL App (1st) 180016-U, an unpublished order. With respect to "cause," defendant also maintains that the decision in *Smith* "was not available at the time of [his] 1999 direct appeal or his 2001 post-conviction petition." For his relief, defendant asks us to remand the matter either for resentencing or second-stage postconviction proceedings.

¶ 32        The State acknowledges that the judge who presided over defendant's trial erred under *Smith* and *Bailey* by denying defendant's request for separate verdict forms delineating the mental states for first degree murder. Nevertheless, the State argues that defendant "failed to allege cause as to why his claim could not have been raised in an earlier petition." Emphasizing that

defendant filed multiple prior collateral attacks against the judgment based on the reasoning of *Smith* and *Bailey*, the State asserts defendant "was aware, or should have been aware, of the legal basis for the claims advanced in the instant petition" earlier. The State further maintains that the rule announced in *Smith* and *Bailey* does not apply retroactively to defendant's case. The State notes that *People v. Reed*, 2014 IL App (1st) 122610, ¶¶ 91-92, holds that *Bailey* does not apply retroactively on collateral review.

¶ 33    In his reply brief, defendant contends he does not need to demonstrate "cause" for failing to raise the instant claim in his previous section 2-1401 petitions or his previous successive postconviction petitions. Defendant further argues that he is not trained in the law, so he should not be expected to have raised his claim "at the first hint of its viability." Defendant asks us to conclude that "*Reed* was wrongly decided, because *Smith* and *Bailey* created a new substantive rule that must therefore apply retroactively."

¶ 34    The Act allows a prisoner to assert that there was a "substantial denial" of his or her constitutional rights in the proceedings that resulted in his or her conviction. 725 ILCS 5/122-1(a)(1) (West 2022). Postconviction petitions initiate collateral proceedings that focus on constitutional claims that have not and could not have been previously adjudicated. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). Thus, "the doctrine of *res judicata* bars issues that were raised and decided on direct appeal, and forfeiture precludes issues that could have been raised but were not." *People v. Dorsey*, 2021 IL 123010, ¶ 31.

¶ 35    The Act contemplates one postconviction petition, so a defendant "faces 'immense procedural default hurdles when bringing a successive postconviction petition.' " *Dorsey*, 2021 IL 123010, ¶ 32 (quoting *People v. Davis*, 2014 IL 115595, ¶ 14). A defendant must seek leave of court to file a successive petition, demonstrating both " 'cause' for the failure to raise the claim in

the initial petition and that 'prejudice' resulted from that failure." *Dorsey*, 2021 IL 123010, ¶ 32. The Act says that "a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2020). "Prejudice" means that "the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020).

¶ 36      At the leave-to-file stage, "the court must determine whether defendant has made a *prima facie* showing of cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24. A trial court should deny leave to file a successive postconviction petition "when it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings." *Dorsey*, 2021 IL 123010, ¶ 33. We review *de novo* an order denying leave to file a successive petition. *Dorsey*, 2021 IL 123010, ¶ 33.

¶ 37      We need not address the parties' dispute as to whether *Smith* and *Bailey* apply retroactively to collateral proceedings, because defendant failed to make a *prima facie* showing of "cause" to justify granting leave to file his third successive postconviction petition.

¶ 38      Defendant filed his initial *pro se* postconviction petition in July 2001. However, the proceedings were protracted, partly due to an appeal and a remand. Defendant, through counsel, filed a second amended petition in October 2009. In May 2010, defendant, through counsel, filed a third amended petition adding two new claims. In August 2010, the trial court denied defendant's petition after a third-stage hearing.

¶ 39      Our supreme court decided *Smith* on April 2, 2009—6 months before defendant filed his second amended postconviction petition, 13 months before defendant filed his third amended petition, and 16 months before the trial court denied the third amended petition. Although

the supreme court subsequently decided *Bailey*, that case applied *Smith*'s rule to a complicated factual scenario not directly relevant to defendant's case. To be clear, it was *Smith* that first gave rise to a claim that defendant should be sentenced as if he were convicted of felony murder. Defendant seems to acknowledge this in his brief ("Quickle could not have challenged the circuit court's denial of his request for separate verdict forms until 2009, when the Illinois Supreme Court" decided *Smith*.).

¶ 40　　　　Defendant's argument regarding "cause" largely rests on *Smith* being unavailable as authority when he filed his initial postconviction petition in 2001. But defendant overlooks that *Smith* became available as authority *during* defendant's initial postconviction proceedings. See *People v. Young*, 2018 IL 122598, ¶ 16 ("[A]ny claim that is not included in the original *or an amended petition* is forfeited.") (emphasis added); 725 ILCS 5/122-1(f) (West 2022) ("Leave of court [to file a successive petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her *initial post-conviction proceedings* and prejudice results from that failure.") (emphasis added); 725 ILCS 5/122-3 (West 2022) ("Any claim of substantial denial of constitutional rights not raised in the original *or an amended petition* is waived.") (emphasis added). Defendant insists that *Smith* should apply retroactively to cases on collateral review. However, defendant could have argued in his initial postconviction proceedings that *Smith* applies retroactively.

¶ 41　　　　In his reply brief, defendant suggests he may not have known about *Smith* and *Bailey* until 2014, as that is when he first cited those cases in a pleading. Defendant also mentions his lack of legal training. These arguments do not persuade us that defendant has shown "cause" for filing a third successive postconviction petition in 2022. As mentioned above, after our supreme court issued its decision in *Smith*, defendant was represented by counsel during his initial

postconviction proceedings, and defendant continued to add new claims to his petition. "Cause" refers to a factor "external to the defense." *Davis*, 2014 IL 115595, ¶ 14. Nothing prevented the defense from discovering *Smith* during defendant's initial postconviction proceedings.

¶ 42 Moreover, defendant has twice raised the same claim he seeks to present in his third successive postconviction petition, albeit under different legal theories. In his April 2014 section 2-1401 petition, defendant argued that *Smith* and *Bailey* rendered his judgment void. When that argument proved unsuccessful, in March 2017, defendant sought leave to file a second successive postconviction petition alleging that he was "actually innocent" pursuant to *Smith* and *Bailey*. In March 2020, the Third District filed an opinion rejecting that claim. *Quickle*, 2020 IL App (3d) 170281, ¶ 25. More than two years later, in June 2022, defendant sought leave to file a third successive postconviction petition, relying on *Smith* and *Bailey* as "cause and prejudice." Defendant has presented his claim piecemeal, which the Act does not permit. See *People v. Davis*, 2014 IL 115595, ¶ 55 ("A defendant is not permitted to develop the evidentiary basis for a claim in a piecemeal fashion in successive postconviction petitions, as defendant has attempted to do here."). Accordingly, we hold that defendant has not made a *prima facie* showing of "cause" to justify granting leave to file a third successive postconviction petition, and the trial court correctly denied leave to file the petition.

¶ 43 Defendant relies heavily on an unpublished 2020 decision in *Price*, which defendant should not have cited because it was filed before 2021. See Ill. S. Ct. R. 23(e) (eff. Feb. 1, 2023) (allowing litigants to cite "for persuasive purposes" unpublished orders entered "on or after January 1, 2021."). At any rate, Price's circumstances are distinguishable from defendant's. In one of Price's prior appeals, our supreme court noted that Price had "unsuccessfully pursued relief under the [Act]" in April 2000 and again in February 2003. *People v. Price*, 2016 IL 118613,

¶ 4. Thus, Price's initial postconviction proceedings were completed long before the supreme court decided *Smith*. Moreover, unlike defendant, Price did not attempt to litigate his claim piecemeal under the Act by first alleging actual innocence and then reframing the claim under the cause-and-prejudice test.

¶ 44                           III. CONCLUSION

¶ 45        For the reasons stated, we affirm the trial court's judgment.

¶ 46        Affirmed.