2023 IL App (1st) 230370-U

No. 1-23-0370

Filed November 22, 2023

Fourth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 09 CR 19109 |
| | ) | |
| TORRY CARROLL, | ) | Honorable |
| | ) | Thomas Hennelly, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Affidavit from shooting victim recanting his identification of the defendant was not of such conclusive character to establish a colorable claim of actual innocence.

¶ 2    Torry Carroll appeals from the circuit court's order denying his motion for leave to file a successive post-conviction petition.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3	Following a bench trial, Carroll was convicted of attempted first degree murder for shooting DeFrantz Harrison in June 2009 and sentenced to a prison term of 28 years. At trial, both Harrison and DeWayne Jackson testified that shortly after leaving a party, two men approached the car they were driving in near the intersection of East 107th Street and South Langley Avenue in Chicago and fired shots. Both Harrison and Jackson identified Carroll in court as one of the shooters. Harrison was struck by a bullet, but Jackson was unharmed. Jackson promptly drove Harrison to a nearby hospital. After being transferred to Christ Hospital, Harrison informed police he knew one of the shooters as "Tank" and identified Carroll as "Tank" in a photo array. Harrison was unable to write at the time due to bandaging on his hands. He directed his mother to sign the advisory form related to the photo array and to write her initials above Carroll's photograph.

¶ 4	Chicago Police Officer Corey Chapton was patrolling in the vicinity of the shooting when he heard gun shots fired. Upon reaching 106th and Langley, Officer Chapton observed citizens pointing toward Carroll, who was running eastward. Officer Chapton drove after Carroll in pursuit. After Carroll jumped over a fence, Officer Chapton chased on foot and tackled him. Only three or four minutes elapsed between the time Officer Chapton heard gunshots and the time he apprehended Carroll.

¶ 5	The following day, Jackson viewed a physical lineup and identified Carroll as one of the shooters. Jackson also knew Caroll as "Tank." In his trial testimony, Jackson explained that he was familiar with Carroll from seeing him around the neighborhood daily. As the shooting began, Jackson observed Carroll coming from the sidewalk in front of his car, about 10 to 15 feet away. Jackson saw a flash coming from Carroll's hand and heard bullets strike the car. Though this occurred at night, Jackson's headlights were on, and Carroll was standing in a location illuminated

by a streetlight. Jackson testified Carroll's face was not covered and he had an unobstructed view of him.

¶ 6    A forensic examiner found two gunshot residue particles from a swab of Carroll's right hand, which are "not normally found on a person's hand." However, the examiner explained that the presence of two gunshot residue particles was consistent with "background samples" and one short of the number of particles required for them to make a conclusive determination.

¶ 7    The trial court found Carroll guilty, and this court affirmed Carroll's conviction on direct appeal over his ineffective assistance and speedy trial claims. See *People v. Carroll*, 2013 IL App (1st) 110819-U.

¶ 8    Carroll filed a post-conviction petition in 2014 alleging ineffective assistance of trial counsel. His petition was summarily dismissed, and Carroll did not appeal. He sought leave to file a successive petition in 2018, alleging multiple bases of ineffective assistance and that his indictment was void. The circuit court denied his motion for leave to file and this court affirmed, while allowing appointed appellate counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Carroll*, No. 1-19-1064 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 9    In 2021, Carroll filed the instant motion for leave to file a successive post-conviction petition along with a proposed petition asserting that he is actually innocent. The petition relied on a 2021 affidavit from Harrison, which Carroll claimed was newly discovered. In the affidavit, Harrison recounts the June 2009 shooting but states that he could not identify any of the shooters as he had ducked down immediately as the shooting started. While at the hospital, detectives "argued and yelled" at him to identify Carroll. Harrison denies that he ever told his mother to sign any photographs and denies he witnessed her do so. He only testified in Carroll's trial, he states,

because police and prosecutors threatened him with jail. Harrison also states that Jackson informed him before Carroll's trial that police and prosecutors were pressuring him to testify. He further states that "in my opinion, due to the sudden appearance of these shooters and my reaction, I do not believe DeWayne Jackson could have identified anyone either."

¶ 10     The trial court denied Carroll's motion for leave to file. In an oral ruling, the court observed that Harrison provided his affidavit 11 years after Carroll's trial, and it amounted to a recantation of Harrison's trial testimony and an admission of perjury. Carroll filed a timely notice of appeal.

¶ 11     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2020)) allows an imprisoned person to challenge their conviction on constitutional grounds apart from a direct appeal. Successive petitions are disfavored as they "plague the finality of criminal litigation." *People v. Tenner*, 206 Ill. 2d 381, 392 (2002). Thus, a petitioner seeking to file a successive petition must first obtain leave from the circuit court by demonstrating either (1) cause and prejudice for a claim of trial error not raised previously or (2) a colorable claim of actual innocence. *People v. Coleman*, 2013 IL 113307, ¶ 96.

¶ 12     To establish a colorable claim of actual innocence, as asserted here, a petitioner must present evidence that is (1) newly discovered, (2) material and not merely cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47. Evidence is newly discovered when discovered after trial and the petitioner could not have discovered it earlier through due diligence. *Coleman*, 2013 IL 113307, ¶ 96. Evidence is material if probative of the petitioner's innocence. *Id*. Noncumulative evidence adds to the information the fact finder heard at trial. *Id*. And evidence is of conclusive character to innocence if, when considered along with the trial evidence, it would probably lead to a different

result. *Id.* The conclusive character of the new evidence is the most important element of an actual innocence claim. *People v. Washington*, 171 Ill. 2d 475, 489 (1996).

¶ 13        In deciding whether leave should be granted to file a successive petition asserting actual innocence, we consider whether the evidence supporting the petition places the trial evidence in a different light and undermines our confidence in the judgment of guilt. *Robinson*, 2020 IL 123849, ¶ 48. We take all well-pled allegations in the petition and supporting affidavits as true unless positively rebutted by the trial record. *Id.* ¶ 45.

¶ 14        We review the circuit court's denial of a motion for leave to file a successive post-conviction petition *de novo*. *People v. Maclin*, 2021 IL App (1st) 172254, ¶ 13. *De novo* review means we assess the motion anew—the same as if the matter had not been heard before and as if no decision had been rendered previously. *Ryan v. Yarbrough*, 355 Ill. App. 3d 342, 346 (2005).

¶ 15        Here, Carroll submits Harrison's affidavit as newly discovered evidence of his actual innocence. The parties dispute whether the affidavit constitutes newly discovered evidence. We observe that neither the motion, the proposed verified petition, nor Harrison's affidavit contain any explanation of how and when Carroll discovered Harrison's recantation. A defendant seeking relief based on newly discovered evidence has the burden of demonstrating "that there has been no lack of due diligence on his [or her] part." *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 26 (quoting *People v. Harris*, 154 Ill. App. 3d 308, 318 (1987)). Conclusory assertions are insufficient. *People v. Beard*, 2023 IL App (1st) 200106, ¶ 53. This court has required more specific facts to establish a recanting trial witness's affidavit as newly discovered. See *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 60 ("there needs to be more factual support for [the] claim that this is 'newly discovered' evidence which could not have been uncovered by due diligence."). However, the record may

supply such facts in some circumstances. See *People v. Smith*, 2015 IL App (1st) 140494, ¶ 19 ("the record supports the conclusion that [the witness's] recantation qualifies as newly discovered evidence *** no amount of due diligence would have allowed [the petitioner] to secure [the witness's] recantation of his identification prior to trial where [the witness] averred that he believed in the identification's accuracy at that time.").

¶ 16    Nevertheless, we need not decide the issue since we can dispose of this appeal based on the most important element—whether the affidavit is of such conclusive character to probably change the result on retrial. Harrison's affidavit is insufficient to raise the probability of a different result. "For purposes of the actual innocence exception, actual innocence means factual innocence, not mere legal insufficiency." (Internal quotation marks omitted.) *People v. Quickle*, 2020 IL App (3d) 170281, ¶ 20 (cited approvingly by *People v. Taliani*, 2021 IL 125891, ¶ 58). Actual innocence means that the person did not commit the crime. *People v. Hood*, 2021 IL App (1st) 162964, ¶ 27.

¶ 17    Harrison offers no evidence that Carroll did not commit the shooting near 107th and Langley in June 2009. Taking the allegations of his affidavit as true, Harrison's recantation only means he does not know who committed the shooting. His asserted inability to identify Carroll as a shooter does not undermine our confidence in Carroll's guilt. It only removes one piece of the evidentiary puzzle assembled in the original trial. In general, newly discovered evidence meeting the conclusive character standard does more than that. *Cf. Smith*, 2015 IL App (1st) 140494, ¶ 12 (witness recanting identification of defendant as the shooter identified a different person in affidavit supporting petition); *People v. Morgan*, 212 Ill. 2d 148, 152 (2004) (recanting eyewitness to double murder claimed one victim killed the other and defendant killed the second victim in self-defense); *Robinson*, 2020 IL 123849, ¶¶ 25-29 (newly discovered witnesses to a murder affirmatively excluded petitioner from involvement).

¶ 18    Harrison's identification of Carroll as one of the shooters was cumulative of Jackson's identification. Harrison's affidavit refutes neither Jackson's identification nor the other circumstances implicating Carroll in the shooting—that he was in the vicinity, fled from police, and some gunshot residue particles were found on his hand. At trial, Jackson gave specific details as to how he was able to observe that Carroll was one of the people shooting, including their relative positions, the distance between them, and lighting conditions. In his affidavit, Harrison provides no specific facts to support the conclusion that Jackson could not have identified the shooters. He only states an unsupported, conclusory opinion that he does not believe Jackson could have identified the shooters. His opinion is not a well-pled fact that we are required to take as true. *People v. Burt*, 205 Ill. 2d 28, 35-36 (2001) ("nonfactual and nonspecific assertions which merely amount to conclusions are insufficient").

¶ 19    Ultimately, Harrison's affidavit fails to place the trial evidence in a different light or undermine our confidence in Carroll's guilt. Accordingly, we find Carroll failed to make a colorable claim of actual innocence and the circuit court properly denied him leave to file a successive postconviction petition.

¶ 20    Affirmed.